DYKMAN, J., concurred.

Decree of surrogate affirmed, with costs.

---

IN THE MATTER OF THE PETITION OF HUBERT O. THOMPSON, COMMISSIONER, ETC., FOR THE APPOINTMENT OF COMMISSIONERS OF APPRAISAL UNDER CHAPTER 490 OF THE LAWS OF 1883.

## IN RE WILLIAM B. WADSWORTH.

## IN RE ELEANOR P. WENTWORTH, AS EXECUTRIX.

## IN RE FRANK B. MALLORY.

*New York aqueduct — what interest in the land taken therefor was acquired under chapter 490 of 1883.*

The New York aqueduct commissioners, appointed under chapter 490 of the Laws of 1883, to supply the city with an increased supply of pure and wholesome water, adopted certain maps, in accordance with the provisions of the act, upon which appeared the following explanatory note:

"The right to be acquired in the parcels of land upon the map is delineated as follows, the fee is colored pink, the easement in perpetuity is colored blue, a temporary easement is colored yellow.".

Thereafter a petition was presented to the court for the appointment of commissioners of appraisal, in which it was stated that "of the real estate so proposed to be taken or affected, certain parcels are required as shaft sites, dumping grounds, portals, open cuts, blow-offs, embankments, gate-houses, etc., for the

purpose of constructing and maintaining said aqueduct. The boundaries of said parcels are as follows, the said parcels being colored on said maps in pink."

"It is also proposed to acquire a temporary easement sufficient to authorize the use and occupation of the surface of certain real estate for the construction and until the completion of said aqueduct. The boundaries and description of said real estate required for such purpose are as follows, such real estate being colored on said maps in yellow."

"The boundaries and descriptions of the sites of the several tunnels which it is proposed to construct are as follows, being colored on said maps in blue."

The tenth section of the act of 1883 provided that " on filing said oath (of the commissioners), in the manner provided in the last section, the said mayor, aldermen and commonalty of the city of New York shall be and become seized in fee of all those parcels of real estate which are on the maps, in the fourth section referred to, described as parcels of which it has been determined by said aqueduct commissioners that the fee should be acquired; * * * and the said commissioner of public works, and the said aqueduct commissioners and the said mayor, aldermen and commonalty of the city of New York, or any person or persons acting under their or its authority, may enter upon, and use and occupy in perpetuity, all the parcels of real estate described in said map for the purpose of constructing and maintaining on, in, under or over the same, the said aqueduct, dams and reservoirs with the said blow-offs, sluices, culverts, bridges, tunnels, ventilating shafts and other appurtenances."

It was insisted by certain of the owners of land, through which a tunnel was constructed for the purposes of the aqueduct, that, under the provisions of the statute, the city acquired a fee in their land, and that they were entitled to compensation for the fee and not for a mere easement, although by the designation on said maps it appeared that an easement only was sought for by the aqueduct commissioners

*Held*, that a claim upon the part of the owners, whose land was to be appropriated under this act, that this provision of the statute conferred upon the corporation of the City of New York and its agents the right to enter upon, and use and occupy in any manner, the parcels of land in question, so long as such occupation and use was for the purpose of constructing or maintaining the aqueduct or its appurtenances, and that such use was inconsistent with and excluded the ownership of the fee by any one other than the city, was not tenable.

That the legislature intended, and had a right, to confer upon the aqueduct commissioners the power to determine what land should be taken in fee, and in what land an easement only should be acquired, and the extent and nature of such easement.

That the city had the right to occupy, continuously and permanently, all the land designated and described on the map as sites for tunnels or other appurtenances, but that no right existed to construct anything in any place not designated on the map.

That where the commissioners decided to take a permanent easement for the maintenance of the aqueduct under the surface of the land, it was entirely consistent with the retention by the former owners thereof of the fee in the land,

subject to such servitude, and that there was nothing in the law which required the city of New York to take and pay for land beyond what was necessary for the construction of this work.

That proof of the value of the fee of such land as was designated upon the map, as being sought to be taken only to the extent of an easement therein, was properly excluded.

SEVERAL appeals by certain claimants from an appraisal and report of the commissioners appointed by an order of the Supreme Court, made in the above-entitled proceeding, dated October 11, 1884, and filed in the office of the clerk of the county of Westchester on that day, so far as it affected the rights and claims of the several appellants, and also from an order made at a Special Term of the Supreme Court, entered in the office of the clerk of the county of Westchester on the 27th day of October, 1888.

*William H. Clark* and *De Lancey Nicoll*, for the City of New York.

*Thomas F. Wentworth*, for the claimants.

DYKMAN, J. :

This case brings to us three appeals from the report of the commissioners of appraisal appointed to ascertain and determine the compensation to be made by the city of New York to the owners or the persons interested in the real estate sought to be acquired or affected by the proceedings under chapter 490 of the Laws of 1883, to provide new reservoirs, dams and a new aqueduct with the appurtenances thereto, for the purpose of supplying the city with an increased supply of pure and wholesome water.

The appeals are taken by the executors of George W. Parsons, deceased, owners of a portion of parcels, Numbers 608, 610 and 612 of the land described on the map of said aqueduct; by Frank B. Mallory, owner of parcels Numbers 606 and 608, part of parcel Number 609 and certain contiguous land not laid out on the map; and by William B. Wadsworth, the owner of other land contiguous to the aqueduct, but not laid down on the map. These three appeals present separate interests, but the claims were all represented by the same counsel and were tried before the commissioners upon the same evidence, and two of them present the same questions.

In the Parsons claim and the Mallory claim it is the insistence of

the appellants that the city acquired a fee in the property appropriated, and not an easement, and that, therefore, the commissioners adopted an erroneous principle and erred in excluding testimony tending to show the damage which the appellants would sustain by the taking of a fee, and consequently awarded them insufficient compensation.

The Wadsworth case involves the question of the competency of certain testimony rejected by the commissioners, and all the appeals require an examination of the statute under which the proceedings were instituted and concluded.

Section 1 of the law designates certain officials and private individuals to carry the provisions of the act into execution for the purpose of supplying the city with an increased supply of pure and wholesome water and that they shall be known as the aqueduct commissioners.

Section 2 requires the commissioner of public works, under the direction of the aqueduct commissioners, to submit to them a plan or plans, with maps, specifications, estimates and particulars relating thereto, for the construction of a new aqueduct or conduit for water from some point on the Croton river or Croton lake to some point in the city of New York, and for the construction of one or more dams and reservoirs to retain such water, and for the construction of such sluices, culverts, canals, pumping-works, bridges, tunnels, blow-offs, ventilating shafts and other appurtenances as may be necessary to the proper construction, maintenance or operation of such aqueduct, dams and reservoir.

Section 3 authorizes the entry upon contiguous land for the purpose of making surveys and examinations for the preparation of the maps required to be made.

Section 4 requires the commissioner of public works to prepare six similar maps or plans of the proposed sites of the proposed dams, reservoirs and aqueducts, sluices, culverts, canals, pumping-works, bridges, tunnels, blow-offs, ventilating shafts and the appurtenances thereof; upon which maps there should be laid out and numbered the various parcels of real estate, on, over or through which the same were to be constructed and maintained, or which should be necessary for the prosecution of the work authorized by the act. On such maps, also, the natural and artificial division lines existing

on the surface of the soil at the time of the survey were to be delineated, and there was to be plainly indicated thereon of which parcels the fee, and over or through which parcels the right to use and occupy the same in perpetuity, is to be acquired.

By section 6 it is provided that, after the maps are filed the counsel to the corporation shall apply to the Supreme Court for the appointment of commissioners of appraisal, upon a petition signed and verified by the commissioner of public works, which should contain a general description of all the real estate to, in or over which any title, interest, right or easement was sought to be acquired for the city for the purposes of the act, each parcel being more particularly described by a reference to the number of such parcel as given on the maps, and the title, interest or easement sought to be acquired to, in or over such parcel, whether a fee or otherwise, was required to be stated in such petition.

By section 7 the counsel to the corporation was required to publish a notice of such application for the appointment of commissioners and a statement of the boundaries of the dams, reservoirs, sluices, culverts, canals, pumping-works, bridges, tunnels, blow-offs and ventilating shafts and of the route of the aqueduct by courses and distances, and of the greatest and least width of its track, with separate enumerations of the numbers of the parcels to be taken in fee, and of the numbers of the parcels in which an easement is to be acquired, with a reference to the time and place of filing the maps, and that was declared a sufficient description of the real estate sought to be taken or affected.

Section 10 provided that, on filing the oath of the commissioners of appraisal, the mayor, aldermen and commonalty of the city of New York should become seized in fee of all the land described on the maps, as parcels of which it had been determined to acquire a fee.

The subsequent provisions of the act relate to proceedings beyond the acquisition of the property, and, therefore, require no further pursuit at this time, but the portions of the law already outlined are sufficient to furnish the rule for the determination of these appeals.

After the passage of the act the aqueduct commissioners organized under it, and the maps and plans required by the fourth section were

prepared and adopted and the commissioners of appraisal were appointed.

Upon the maps adopted the parcels affected by the constructions were all numbered and shaded, some were colored pink, some blue and some yellow, and each of the maps contained the following explanatory note : " The right to be acquired in the parcels of land upon the map is delineated as follows : the fee is colored pink, the easement in perpetuity is colored blue, a temporary easement is colored yellow."

In the petition presented to the court for the appointment of commissioners of appraisal, it is stated that : " Of the real estate so proposed to be taken or affected, certain parcels are required as shaft sites, dumping grounds, portals, open cuts, blow-offs, embankments, gate-houses, etc., for the purpose of constructing and maintaining said aqueduct. The boundaries of said parcels are as follows, the said parcels being colored on said maps in pink."

" It is also proposed to acquire a temporary easement sufficient to authorize the use and occupation of the surface of certain real estate for the construction and until the completion of said aqueduct. The boundaries and description of said real estate required for such purpose are as follows, such real estate being colored on said maps in yellow."

" The boundaries and descriptions of the sites of the several tunnels which it is proposed to construct are as follows, being colored on said maps in blue." Then follows a description of a strip of land thirty-three feet in width on each side of the center line of the survey of the aqueduct route as shown on the maps, running through the lands of Parsons and Mallory and including the parcels numbered on the maps from 604 to 616, inclusive, and the strip so described is marked on the maps in blue, which manifests the intention of the commissioner to acquire a perpetual easement only in those parcels.

The commissioners awarded $3,804 for the acquisition of the easement in perpetuity in parcels 609, 610 and part of 612, being the Parsons land, and $832.70 to Mallory for the perpetual easement in parcels Nos. 606 and 608 and part of 609, and $2,000 for damages to contiguous real estate.

No entry was made upon the land of Wadsworth, but he inter-

posed a claim for damages to contiguous real estate, and his claim was not allowed.

The scope and meaning of the statute under which these proceedings were instituted is entirely free from ambiguity, and it manifests the intention of the legislature to delegate to the city of New York the power to exercise the right of eminent domain, and to confer upon the commissioners appointed to construct the new aqueduct the power and discretion to take such interest and right in the lands necessary to be acquired for the accomplishment of the public purpose in contemplation.

Such a delegation of authority and power is not only within the competence of the legislature, but it is precisely within the limitation of the Constitution, which restricts the right to condemn private property for public use to the reasonable necessity of the corporation in the discharge of its public duty. (*Sixth Ave. R. R. Co.* v. *Kerr*, 72 N. Y., 330; *Sweet* v. *Buffalo, etc., Ry. Co.*, 79 id., 293; Cooley's Con. Lim., 559; *Rensselaer, etc., R. R. Co.* v. *Davis*, 43 N. Y., 137; *Washington Cemetery* v. *Prospect Park R. R. Co.*, 68 id., 591; *Clark* v. *Worcester*, 125 Mass., 226.)

In the last case the question involved had reference to the compensation to be made for the construction and maintenance of a sewer on the land of the claimant, and it was, therefore, similar to these, and the court said in the opinion : " The right to take is limited by the public exigency stated; beyond that the power to exercise the right of eminent domain is not given. The statute is to be strictly construed in this respect. * * * The power to take land for the purpose stated does not confer the right to take an absolute estate in fee simple, because such an estate is not necessary to the enjoyment of the defined privilege. * * * The use only of the petitioner's land was taken, and that use is limited to the purposes named. * * * For all purposes consistent with that enjoyment the right to use the land remains in the owner of the fee."

Reaching the conclusion that it was within the power of the legislature to delegate the power to determine what interest or right the city should acquire in the lands in question, it is in order now to inquire what the intention of the legislature was as the same is expressed in the act.

In section 4 the aqueduct commissioners are required to adopt maps and plans indicating the sites of the proposed dams, reservoirs, aqueducts, etc., and to indicate upon the maps " of which parcels the fee, and over or through which parcels the right to use and occupy the same in perpetuity is to be acquired."

Then the petition for the appointment of commissioners of appraisal is required to state " the title, interest or easement sought to be acquired to, in or over such parcel, whether a fee or otherwise."

Then, again, in the notice of the application for the appointment of such commissioners, there was required " separate enumerations of the numbers of the parcels to be taken in fee and of the numbers of the parcels in which an easement is to be acquired."

By section 10, when the oath of the commissioners of appraisal was filed the city became seized in fee of these parcels of land, described as parcels of which it has been determined by said aqueduct commissioners that the fee should be acquired.

These provisions of the statute denote the intention of the legislature to confer upon the aqueduct commissioners the power to determine what land shall be taken in fee and in what land an easement shall be acquired, and the extent and nature of such easement.

It becomes, therefore, next in order to inquire what the aqueduct commissioners have determined in the exercise of the power so delegated to them and with what intention such power has been exerted, so far as their action has affected these appellants.

They first determined upon and adopted a map and a plan of con_struction according to which the portion of the aqueduct affecting the parcels of real estate in question is laid from two hundred and fifty to three hundred feet below the surface of the ground, and by which there is to be no structure of any kind between the upper surface of the aqueduct and the surface of the earth, and the surface of the land is not to be disturbed or used in any way.

Upon the adopted maps of the proposed site and location of the aqueduct they have designated the entire portion thereof, running through the land in question, as being from two hundred and fifty to three hundred feet below the surface of the earth, and have indicated by the blue color that the fee of this property was not to be acquired, but only the right to use and occupy the same in perpetuity with the aqueduct. Then a petition was presented to the

court stating that a permanent easement only was to be acquired in these lands, and the notice of such presentation was in conformity and harmony with the statement in the petition. Thus the commissioners have indicated their determination to acquire in these lands only an easement for the perpetual occupation of the same by the aqueduct, and for the use of that structure for a continuing water-way.

We, therefore, reach the conclusion that the city has acquired only a permanent easement in these lands, unless the legislature has authorized a use of the premises by the city which is inconsistent with and excludes other ownership. Such is the contention of these appellants, and that presents the great question in the construction of this aqueduct law.

The argument in favor of the acquisition of a fee is based upon section 10 of the act, which, as we have already seen, provides that upon filing the oath of office of the commissioners of appraisal the city "shall be and become seized in fee of all those parcels of real estate which are on the maps in the fourth section referred to, described as parcels of which it has been determined by said aqueduct commissioners that the fee should be acquired, * * * and the said commissioner of public works, and the said aqueduct commissioners, and the said mayor, aldermen and commonalty of the city of New York, or any person or persons acting under their or its authority, may enter upon and use and occupy, in perpetuity, all the parcels of real estate described in said map, for the purpose of constructing and maintaining on, in, under or over the same, the said aqueduct, dams and reservoirs with the said blow-offs, sluices, culverts, bridges, tunnels, ventilating shafts and other appurtenances."

The provisions for the entry upon and use of the land, it is insisted, confers upon the corporation of the city of New York and its agents, the right to enter upon and use and occupy, in any manner, the parcels of land in question, so long as such occupation and use is for the purpose of constructing or maintaining the aqueduct or its appurtenances, and that such use is inconsistent with and excludes the ownership of the fee by any one other than the city. We do not find the position tenable.

Within the scheme of the act there are but two uses which can be made of these lands in question for the purpose of constructing or maintaining the aqueduct and its appurtenances as laid out on the

maps of the aqueduct commissioners, one by the occupation of an underground portion of them by the body of the aqueduct, and the other by establishing through them a communication by a shaft or tunnel between the surface of the ground and the body of the aqueduct. The latter is a purpose not contemplated by the last part of section 10 of the act, but independent of that the land in question cannot be appropriated to any such use.

The law requires the aqueduct commissioners to adopt plans for the construction of such tunnels as may be necessary to the construction, maintenance or operation of the aqueduct, and for the location of the sites of such tunnels, and provides for the acquisition of the fee of the land through which the same are to run; and the manifest purpose and design of the requirement for the location of the sites of the tunnels was to assist in the selection of the parcels of land in which the city should acquire a fee, and, therefore, their location was a prerequisite and a condition precedent to the appointment of commissioners of appraisal and their acquisition.

The city could take only what was necessary to the accomplishment of the public purpose in view, which was the building of the conduit, and as an essential prerequisite to the condemnation of any interest in the land, it was necessary to designate, with certainty, the situation and location of all land to be affected, and the right to be acquired therein, and the purpose of such acquisition, and nothing could be taken which was not specified upon the maps and plan of construction and described and prayed for in the petition for the appointment of commissioners of appraisal.

No sites for any erection were located upon the property in question except the aqueduct, and the petition only asked for a permanent easement therein for that purpose, and, therefore, no entry can be made upon these lands, and no use or occupation of them can be had except for the purpose of constructing or maintaining the aqueduct, two hundred and fifty feet beneath the surface.

These principles run through and control all the cases of this kind. Wherever a map is required to be made of property proposed to be taken for public purposes great particularity and precision is required; and as the appropriation of property in virtue of the right of eminent domain is in derogation of private right, nothing can be taken by implication.

The fair interpretation of the statute, therefore, is that the city has the right to occupy continuously and permanently all the land described and designated on the map as sites for tunnels or other appurtenances, and that no right exists to construct anything in any place not designated on the map.

The law invested the commissioners with discretionary power to take a fee in land necessary for some purposes, to take a permanent easement in others, and a temporary easement in others, and that discretion has been exercised and exhausted.

They decided to construct an aqueduct in an underground excavation far below the surface of the earth from Croton lake to the city of New York, a distance of over twenty-nine miles, and as the right to excavate such an opening and construct and maintain the aqueduct therein was all they required, they decided to take a permanent easement in the land through which it passed for that purpose.

As such an interest in the land was all that was necessary to the attainment of the end in view, it was all that could be justly taken. In the case of *Washington Cemetery* v. *Prospect Park Railroad* (68 N. Y., 591) the land had been taken for a street and the court there said : " No implication ought to be indulged that a greater interest or estate is taken than is absolutely necessary to satisfy the language and object of the statute making the appropriation * * * The land is taken for an avenue, and this purpose is fully satisfied by the taking of an easement in the land for the street or highway. There is nothing inconsistent in the public use of the land for an avenue and the retention by the land owners of the fee, subject to the easement. It is not necessary that exact or technical language should be used in a statute for taking private property for public use in order to vest the fee in the public, but it must clearly appear, before this effect can be given to a statute, that it was the intention of the legislature, disclosed by the act itself, to take a fee." This long extract is made because it is an authoritative statement of the principle which must control the question now under examination.

No interest is necessary in the lands in question beyond an easement, and the use of the land for an aqueduct is perfectly consistent with the retention of the fee subject to that servitude. There is no reason why the owner should be deprived of the use of his land which

he can enjoy to the fullest extent, and there is yet less reason for compelling the city to take and pay for the fee when its acquisition is unnecessary. Nothing in the law positively requires the city to take and pay for land beyond its necessities, and it should not be compelled or permitted to do so without the plain requirement of the statute.

Proof of the value of the land was, therefore, properly excluded, and as the city took only an easement the award is ample. The Parsons claim and the Mallory claim endure the same result.

The Wadsworth claim rests upon a different basis. Neither the aqueduct or any other structure rests upon the property, and the claim was for consequential injury. The commissioners decided that no injury had resulted, and made no award, and we concur with them in that conclusion. There was a question of evidence which requires no examination, and which was properly disposed of by the commissioners.

The orders should all be affirmed, with ten dollars costs and disbursements.

Barnard, P. J., concurred.

Award of commissioners affirmed, with costs.