## JOHN S. CLARK vs. CITY OF WORCESTER.

Worcester. Oct. 3, 1877. — Aug. 30, 1878. ENDICOTT & LORD, JJ., absent.

On a petition for the assessment of damages for the taking of land by the city of Worcester under the St. of 1867, c. 106, providing for a system of sewerage for the city, the presiding judge refused to rule that the city had a right of way over the location and a right to keep the location of the sewer free from structures by abutters, but instructed the jury that the city could enter upon the land, make repairs, reconstruct and make such changes as it saw fit, subject to which right the petitioner could use and improve the land as he wished. *Held*, that the petitioner had no ground of exception.

The assessment by the city of Worcester under § 4 of the St. of 1867, c. 106, providing for a system of sewerage for the city, of the benefit to an estate from which land is taken for the construction of a sewer, includes such benefit only as is derived in common with the other estates drained thereby ; and a peculiar benefit to the estate may be set off by the city in the assessment of the owner's damages for the taking of his land.

PETITION under the St. of 1867, *c.* 106, for a jury to assess damages for the taking of land by the respondent for the construction of the Mill Brook Sewer in Worcester. Trial in the Superior Court, before *Dewey*, J., who allowed a bill of exceptions in substance as follows :

It appeared that the respondent took, in constructing its sewer, a strip of the petitioner's land seventeen feet wide, being the westerly half of its location where it abutted on the petitioner's remaining land ; and that the sewer extended a mile each way from the petitioner's land. The order of taking was as follows :

" City of Worcester. In City Council. December 30, 1867. Voted, That we adjudge it necessary for purposes of sewerage, drainage and the public health, to fix the boundaries of that portion of Mill Brook between the northerly side of Green Street and the southerly side of Front Street, to straighten, deepen and pave the channel of said brook between the termini aforesaid, and to inclose the same in retaining walls, and to appropriate, establish and lay out the same as a main drain and common sewer. Therefore ordered, that the boundaries of Mill Brook between the termini aforesaid be fixed as follows." [Then followed the boundaries of the sewer.] " And that the same sec

tion of said brook above described be established and laid out as a main drain and common sewer and suitably paved and enclosed in retaining walls."

There was evidence tending to show that the sewer was laid out thirty-four feet in width, and was very strongly built in the form of an arch about nine feet in height, the thickness of the masonry being some eighteen inches, and the outside span of the walls at the base about thirty feet, the bottom of the water-course having been sunk in building the sewer some five feet, and the sewer paved with stone; that, before the sewer was built, Mill Brook had become foul, and was covered in by the sewer arch, and that freshets had caused the cellar of the petitioner's building to be sometimes flooded, which was no longer so after the building of the sewer, by reason of the lowering of the stream; that the whole of the land taken was covered with water in 1867, but had been actually occupied by the petitioner, for more than twenty years before the taking, by piles driven in the soil, upon which, platforms and some wooden buildings had stood for the whole period, which were used for business purposes; and that it was practicable for the petitioner to have built a brick building over the water, on stone arches set on piles, without any greater obstruction to the flow of the water than that caused by the piles.

The respondent contended that the sewer had increased the value of the land taken; that the petitioner had a right to use the land over the sewer for all purposes, including permanent structures, such as buildings, subject only to the right of the respondent to enter to repair the sewer, to reconstruct and make such changes as it saw fit; and introduced evidence tending to show the increased value of the land upon this theory, contending that there was small risk that the respondent would ever be called on to repair the sewer at this point. This evidence was admitted against the objection of the petitioner.

The respondent also contended that the adjoining land of the petitioner, owing to its peculiar location, nature and condition, was greatly benefited by reason of the covering in, sinking and paving of Mill Brook, which benefit, including drainage, was direct and peculiar to this estate, and different in kind from the benefit derived by other estates in the vicinity and abutting on

the sewer, and which benefit could be set off against the damages suffered by the petitioner. The petitioner offered to show that he had been assessed and had paid his proportionate part of the expenditure incurred by the city in the construction of sewers under the St. of 1867, c. 106 ; that his estate was adjudged by the mayor and aldermen to be benefited thereby in the following orders: " January 19, 1872. Ordered, That the sum of four hundred and fifty thousand dollars be assessed upon the persons and estates benefited, together with such sums as the mayor and aldermen may determine as entrance fees." " April 15, 1872. Whereas the city of Worcester has expended an amount exceeding one million dollars in laying out and constructing sewers and drains, by order of the city council under an Act of the Legislature passed March 29, 1867, and approved by the voters of Worcester, April 16, 1867, and whereas it is adjudged, by the mayor and aldermen of the city of Worcester, that the estates mentioned and described in the foregoing schedule are benefited thereby, and whereas said mayor and aldermen have adjudged that the sum of ten thousand two hundred and twenty dollars is the proportionate share of said expenditure, to be assessed upon said estates and upon the owners thereof, it is therefore ordered, that the persons named in the foregoing schedule, being owners of the estates therein described, which said estates are situated upon streets in which drains and sewers have been laid under and by virtue of said Act, and upon the line thereof, and of estates which are benefited thereby, be and they are hereby charged and assessed with the sums set opposite their respective names, as their respective proportionate shares of said expenditure ; and said schedule is hereby committed to the city treasurer and collector, and he is hereby directed to collect of the persons named in said schedule the amounts therein assessed against them respectively. And all said sums shall become due and payable on the third day of June next, and said treasurer and collector shall cause written or printed notices to be given to all persons and parties or their tenants or lessees forthwith." The petitioner contended that the benefit derived from the sewer as a sewer, including drainage of his land, could not be set off in this suit, being contemplated in, and paid for by, the above tax so assessed.

The judge admitted evidence of benefits, substantially of the character as contended by the respondent, against the petitioner's objection.

The petitioner asked the judge to instruct the jury as follows: "1. Under the statute authorizing the taking of this land by the city, the city, after taking the land, had a right of way over the location, and a right to keep the location of the sewer free from structures by abutters. "2. The respondent is not entitled to have set off as benefits any such effects on the real estate of petitioner as were the natural effect or work of the sewer as a sewer, and this would include drainage of the land, the petitioner's land having been assessed for a sewer assessment under the statute."

The judge refused to give these instructions, but instructed the jury as follows: "The respondent, by the order by which the land was taken and the sewer located, acquired the right to construct and maintain a sewer within the limits of the location, and to enter upon the land to make repairs, reconstruct and make such changes as it saw fit in the sewer; and, subject to these rights of the respondent, the petitioner remained the owner of the land, and had the right to use and improve it in any manner he saw fit; and the respondent is entitled to have allowed by way of set-off, the benefit, if any, to the property of the petitioner from the sewer; but the benefit to be set off must be some direct, peculiar, and special benefit derived by the petitioner's estate from the sewer, and not the general benefit acquired by this, with other estates adjacent to the sewer."

The jury returned a verdict for the respondent; and the petitioner alleged exceptions.

*W. S. B. Hopkins*, for the petitioner.

*F. T. Blackmer*, for the respondent.

COLT, J. The city of Worcester, by the St. of 1867, c. 106, was authorized to alter and deepen the channels of several brooks, whose names are given; to enclose them in walls, and to cover them so far as might be adjudged necessary for purposes of sewerage, drainage and the public health. The right to take land and water rights was given, subject to the payment of damages, to be assessed in the same manner and upon the same principles as damages are assessed in the laying out of highways.

Under this authority, Mill Brook, where it passed through the petitioner's land, was laid out as a main drain and common sewer. Its channel was widened, deepened, enclosed in walls, and covered with substantial stone masonry. The petitioner claimed damages for this taking.

At the trial before the jury the city contended that the building of the sewer had increased the value of the petitioner's land taken ; that the petitioner had the right to use the land within the location for all purposes, including building purposes, subject only to the right of the city to enter for repairs, to reconstruct, or to make such changes as it saw fit ; and was permitted, against the petitioner's objection, to introduce evidence tending to show increased value in the land on account of these rights. The petitioner on this point asked the judge to rule that by the taking of the land the city acquired a right of way over it, and a right to keep it free from structures. But the judge, refusing this, instructed the jury that the city acquired the right to construct and maintain a sewer within the location, with the right to enter upon it, make repairs, reconstruct, and make such changes in the sewer as it saw fit ; and that, subject to these rights, the petitioner remained the owner of the land, and had the right to use it in any manner he saw fit.

We are of opinion that the ruling requested was properly refused ; that the instruction given was correct and sufficient for the requirements of the case ; and that with this instruction, and as necessarily controlled by it, the evidence objected to was properly admitted.

The authority given to the city was to take and appropriate so much of the petitioner's estate as should be adjudged necessary to carry out the purposes of the act. The Legislature did not undertake to define more particularly the nature of the estate required to be taken, or the quantity of the land to be used. The right to take is limited by the public exigency stated ; beyond that, the power to exercise the right of eminent domain is not given. The statute is to be strictly construed in this respect. The same terms are used which are employed in the statutes giving authority to take land, to railroad and turnpike corporations, and the same rules of interpretation govern. *Boston & Lowell Railroad* v. *Salem & Lowell Railroad*, 2 Gray, 1 *Thacher* v. *Dartmouth Bridge*, 18 Pick. 501.

The power to take land for the purpose stated does not confer the right to take an absolute estate in fee simple, because such an estate is not necessary to the enjoyment of the defined privilege any more than it would be necessary where land is taken for a highway, railroad or turnpike. The use only of the petitioner's land was taken, and that use is limited to the purposes named. The rule is applicable, which defines the rights of the owner of an easement in the land of another, by determining what is reasonably necessary for the enjoyment of that easement. For all purposes consistent with that enjoyment, the right to use the land remains in the owner of the fee. *Atkins* v. *Bordman*, 2 Met. 457, 467. *Perley* v. *Chandler*, 6 Mass. 454. *Adams* v. *Emerson*, 6 Pick. 57. *Proprietors of Locks & Canals* v. *Nashua & Lowell Railroad*, 104 Mass. 1, 11. Thus, if the easement is a public or private right of way over the surface of the land, the rule forbids the erection of anything which obstructs that right. If it is a right to construct and maintain an underground drain, sewer or aqueduct, then the landowner may well use and cultivate the surface of his land, erect fences and perhaps other structures thereon, without any invasion of the rights of the owner of the easement. It is a question which must be submitted to the jury, unless the invasion of the right complained of is so manifest as to leave no question of fact for their consideration.

In this case, it could not be properly ruled in favor of the petitioner, that the city, as matter of law, had a right of way generally over the location in question, or a right to keep it free from all structures. Nor could it be properly ruled, in favor of the city, that the petitioner had the right to erect structures of any description. The use which he might make of the surface of his land is largely a question of fact; it depends on the size and strength of the sewer, the depth of its location, the character and size of the stream of water flowing through it. And, under the instructions given, the question, as bearing on the damages to be assessed, was properly left to the jury.

Upon the question of the benefits which were to be set off against the claim for damages, the judge ruled that they must be direct, peculiar and special benefits derived by the petitioner's estate from the sewer, and not the general benefits acquired

by this estate with other estates adjoining. By the act under which the sewer was located, the damages were to be assessed in the same way as in the laying out of highways. Section 4 of that act also provides that estates benefited by the sewer shall be assessed a proportionate share of the expenditure of the city· for drains and sewers. Under this section, the petitioner had duly paid his assessment, and contended that the benefit, which he insisted included drainage of this land, having been thus paid for, could not be set off in this proceeding. But the assessment under § 4 is an assessment, upon the several classes of estates, of a proportionate share of the expenditure of the city for drains and sewers, and not an assessment for the particular benefit. derived by any estate from any particular sewer. It is not based upon the peculiar and special benefits of each estate. *Butler* v. *Worcester*, 112 Mass. 541. *Workman* v. *Worcester*, 118 Mass. 168. *Sexton* v. *North Bridgewater*, 116 Mass. 200.

It is the intention of the statute that a landowner shall only receive such damages as he is entitled to, after deducting special benefits, and shall be liable to be assessed in common with other estates of the same class for his just and proportionate share of the whole expense for sewers and drains.

*Exceptions overruled.*