MARY W. GARDNER *vs.* INHABITANTS OF BROOKLINE.

Suffolk. March 4. — Sept. 4, 1879. MORTON & ENDICOTT, JJ., absent.

At the trial of a petition for the assessment of damages for land taken by a town, for the purpose of supplying its inhabitants with water, under the St. of 1872, c. 343, it appeared that the town had previously taken another strip of land running through the land in question, within which it had constructed a filtering gallery and obtained a large supply of water. A witness, who had testified for the petitioner to the value of the land, in his opinion, as a source of water-supply, was asked by the petitioner what would be the effect upon the existing filtering gallery if similar galleries were constructed at a lower level on the land of the petitioner. *Held*, that the question was properly excluded.

At the trial of a petition for the assessment of damages for land taken by a town under the St. of 1872, c. 343, a witness for the petitioner testified that the land in question was suitable for the production of cranberries. He was then asked by the petitioner what was the market value of cranberries at the time of the taking in 1875; which question was excluded. On cross-examination, he testified that cranberries were lower then than in 1875. On reëxamination, the question put to him by the petitioner was again excluded. *Held*, that the question was properly excluded.

At the trial of a petition for the assessment of damages for land taken by a town under the St. of 1872, c. 343, after a witness had testified for the petitioner that the land in question was suitable for the production of cranberries, another witness was allowed to testify for the respondent to an actual sale, at or about the time of the taking, of land equally suitable for raising cranberries, situated in an adjoining town within half a mile of the river on which the land in question bordered. *Held*, that the petitioner had no ground of exception.

At the trial of a petition for the assessment of damages for land taken by a town under the St. of 1872, c. 343, some of the witnesses for the petitioner having testified to the value of the land with the wood upon it, the respondent was allowed to introduce evidence of the value of wood removed from the land in question by the petitioner after the taking; and the jury were instructed that if, in estimating the damages for the taking, such estimate included the value of the land with the wood then upon it, the value of the wood subsequently taken should go in reduction of such damages. *Held*, that the petitioner had no ground of exception.

PETITION to the Superior Court for a jury to assess the damages sustained by the petitioner by the taking of her land by the respondent in constructing and maintaining its water-works under the St. of 1872, c. 343.

At the trial, before *Putnam*, J., it appeared that the petitioner was the owner of a tract of about fifty-one acres of land on Cow Island, in that part of Boston formerly West Roxbury, and bordering on Charles River. On June 16, 1874, the town, acting

under the provisions of said act, took seven acres of the land, being a strip two hundred feet in width, extending across the entire tract, and on January 25, 1875, the petitioner conveyed the same to the town, reserving in her deed the right of way across this strip to connect her remaining land. The town determined in 1874 to obtain, and has ever since obtained, its supply of water from this strip of land. Prior to May 1875, the time of the taking set forth in this petition, the respondent had built on this strip of land a filtering gallery, from which large quantities of pure water were daily pumped to a reservoir in the town from which they were distributed. There was evidence tending to prove that the water in the filtering gallery came wholly from the adjoining land by percolation, and not from the river.

The petitioner contended that a portion of the meadow-land embraced in this taking was not only valuable as a source of water-supply to neighboring towns like Dedham and Needham, which had no water-supply, but was essential to Brookline in order to protect; or, if necessary, to extend its own water-supply. Upon this part of the case, they called Edward Sawyer, an experienced hydraulic engineer, who testified that he had been employed by various cities and towns for the purpose of providing water-supply, and had been employed by the town of Brookline to make preliminary examinations for its own supply, and that he was familiar with the land in controversy; that a certain portion of the same was valuable as a source of water-supply, and had a capacity, in his opinion, of 500,000 gallons daily, and that he knew what was paid for such lands. He was then asked by the petitioner the following question: " Taking into account all the demands from any source, and all the requirements from any source that were, in your judgment, reasonable and probable at that time, can you form an estimate of what was the fair value of that low land as a source of water-supply at that time, and if so, what was it? " To which he answered, " A man might reasonably expect to get $4000 or $5000 for it as a source of water-supply." No objection was taken to this question and answer. The petitioner then asked him the following question: " Taking that tract of two hundred feet in width in which the filtering gallery now is, and assuming that the owners of the adjoining land should dig filtering galleries or wells at a lower

level upon that adjoining land and should draw down to that lower level, what in your judgment is the capacity of that filtering gallery for a supply of water?" To this question the respondent objected, and the judge excluded it. The petitioner then asked the witness the following question : " What would be the effect, in your judgment, of sinking wells or filtering galleries, similar to what there are now upon this two-hundred-feet tract, upon the adjoining land of the petitioner, and drawing the water down to a level below that of the filtering gallery?" This question was also objected to by the respondent, and excluded.

The petitioner called Cyrus Cahoon, who was admitted as an expert on the subject of cranberry culture, and who testified that the meadow-land included in the land taken was suitable for raising cranberries, and was capable of producing one hundred barrels of cranberries to the acre, and as to the expense necessary to prepare the land for raising the crop. The petitioner then asked him what was the market value of cranberries in May 1875. The judge, upon the respondent's objection, excluded the question. The witness was then cross-examined by the respondent's counsel, who asked him whether the price of cranberries was lower now than it was in 1875, to which he replied that it was. The petitioner, on reëxamination, then asked him what was the price in 1875, to which the respondent objected. The judge excluded the question.

The respondent called Francis Marsh, who testified that he owned meadows in Dedham which were, in his opinion, about the same thing as the petitioner's land ; equally as good as that for the purpose of raising cranberries ; that he had made an examination of the lands in controversy sufficient to know about them as to their quality, and that within three or four years he had sold fifteen acres of his land in Dedham. It appeared that these meadows were within half a mile of Charles River, that the land of the petitioner was on one side of the river, and Dedham on the other ; but it did not appear in what part of the town they were situate, or how near the petitioner's land, nor any other fact relating to them except as above stated. The respondent then asked the witness the price for which he made the sale. The petitioner objected, but the judge admitted the question.

The respondent offered to prove that, at the time of the taking, the petitioner's land was largely covered with standing trees, and that since that date the petitioner had cut off a portion of the same and had sold and received the proceeds of the same, and offered evidence as to the value of the wood so taken. The petitioner objected to the admission of this evidence as immaterial. The judge ruled that in the existing state of the pleadings it might be inadmissible, but suggested that the respondent might amend its answer. The respondent thereupon filed an amended answer, setting up the above facts, and averring that the proceeds of the wood "should go in diminution or recoupment of, or set-off to, the petitioner's claim or demand." The petitioner objected to the allowance of the amended answer, but the judge allowed it. The respondent then offered the above testimony in support of the amended answer, and the judge admitted the same on the ground that the testimony of some of the witnesses was of the value of the land with the wood upon it in May 1875. Upon this point, the judge instructed the jury that if, in estimating the damages for the taking of the land in May 1875, such estimate included the value of the land with the wood then upon it, the value of the wood subsequently taken should go in reduction or diminution of such damage.

The jury returned a verdict for the petitioner for less than the amount claimed; and she alleged exceptions.

*R. M. Morse, Jr.*, for the petitioner.

*C. H. Drew*, for the respondent.

COLT, J. By the St. of 1872, *c.* 343, the town of Brookline was authorized to supply its inhabitants with water from Charles River, and to take by purchase or otherwise the real estate necessary for constructing and maintaining the works, and proper for raising, retaining, and distributing the water so taken.

At the trial, it appeared that the town had previously taken and paid for another strip of land running through the land in question, within which it had constructed a filtering gallery, and obtained a large supply of water. A witness was called by the petitioner, who testified in chief, without objection, to the value of the land, in his opinion, as a source of water-supply. He was then, by two questions of the petitioner, asked what would be the effect upon the existing filtering gallery if similar galleries

or wells were constructed at a lower level on the adjoining land of the petitioner, which we understand to be the land for which she now seeks compensation. The judge properly refused to allow these questions to be put. The witness may indeed be permitted, or required, to give the facts and reasons on which his opinion is founded, as has been many times settled by this court. *Hawkins* v. *Fall River*, 119 Mass. 94, and cases cited. But the questions here put relate to the water-yielding capacity of a tract of land not in controversy, under a supposed and improbable condition of things. The power of the owner of the land taken to injure the proprietors of the adjoining land is a remote consideration, improper to be directly suggested by the petitioner to his own witness as an element of value. The question is, not what is the value and importance of the land to the respondent in view of the uses which it makes of adjoining land, but what is the fair market value of the land taken.

Another witness called by the petitioner testified that the land taken was suitable for the production of cranberries. He was asked by the petitioner, what was the market value of cranberries at the time of the taking, in 1875; and this question was excluded. But, on cross-examination, in answer to the respondent, the witness said that cranberries were lower now than in 1875. On reëxamination by the petitioner the question first put in chief was again excluded; and it appears to have been properly excluded each time. The land was not prepared or used for the cultivation of cranberries. The question put involved an inquiry into a great variety of collateral matters : the expenses and uncertainty of cultivation, the state of the cranberry market in 1875, and the average value of that crop on similar land. There must be a limit to questions concerning the possible future capacity of the land; and so it has been held that testimony of what would be the fair rental value of land, with a suitable and proper building upon it, was too prospective and indefinite in its nature to be competent evidence of present value. *Burt* v. *Wigglesworth*, 117 Mass. 302.

Nor was the question rendered admissible by the cross-examination. The market value or price of cranberries in 1875 is one fact; and the fact that they were lower in price now than they were in that year, is another and distinct fact, which, although

drawn out on cross-examination, does not make the former admissible.

As to the testimony of the witness Marsh, we cannot say, from the facts stated, that it was not in the discretion of the judge to admit evidence of an actual sale, at or about the time, of land equally suitable for raising cranberries, situate in the adjoining town within a half a mile of Charles River, on which the land in question bordered. If the question was as to the value of building lots, the exact situation of the two parcels with respect to each other might be of more importance; but when it is as to the value of land of rare quality, which is adapted to the cultivation of cranberries, a different standard applies, and, if the land sold is in the same general locality and of the same peculiar quality, the price obtained may afford a just measure of the value of the land taken. *Benham* v. *Dunbar*, 103 Mass. 365. See also *Chandler* v. *Jamaica Pond Aqueduct*, 122 Mass. 305.

The court permitted the respondent, upon filing an amended answer, to introduce evidence of the value of wood removed from the land and sold by the petitioner since the taking, on the ground that the testimony of some of the witnesses was of the value of the land with the wood upon it; and, upon this point, instructed the jury that if, in estimating the damages for the taking, such estimate included the value of the land with the wood then upon it, the value of the wood subsequently taken should go in reduction of such damages. As we understand the bill of exceptions, this ruling was sufficiently favorable to the petitioner. All parties apparently proceeded on the ground that the right of the town to take land under the act for the purposes named did not necessarily include the right to take growing timber. The petitioner was permitted by the town, without objection, to remove it after the taking. The authority given by the act was to take and appropriate so much only of the petitioner's estate as should be necessary and proper to carry out the purposes therein stated. The right to take is limited by the public exigency, in the same way as it is limited when land is taken for highways, railroads and public sewers. *Clark* v. *Worcester*, 125 Mass. 226. The power to take an absolute estate in fee simple is not conferred unless such an estate is necessary to the enjoyment of the defined privileges. There is

nothing here to show that growing timber was necessary to the enjoyment of the respondent's rights, or was intended to be included in the taking. The petitioner, in fact, did not object to the admission of the evidence on the ground that the title to the timber vested in the town, and must be included in the estimate of damages, although afterwards carried away by the petitioner, (see *Old Colony Railroad* v. *Miller*, 125 Mass. 1,) but only because it was immaterial. The evidence in this view, except as it furnished the means of correcting previous estimates which included the timber, was immaterial. But it was competent for this limited purpose, and was properly admitted, without regard to other grounds upon which the judge seems in part to have placed his ruling.                                   *Exceptions overruled.*