JOHN COCHRANE, JR. *vs.* CITY OF MALDEN.

Middlesex.   January 7, 1890. — October 25, 1890.

Present: DEVENS, W. ALLEN, C. ALLEN, HOLMES, & KNOWLTON, JJ.

*Watercourse — System of Drainage — Obstruction of Stream by Culvert — City — County Commissioners.*

Under the St. of 1869, c. 378, authorizing county commissioners to change, widen, straighten, and deepen the channel of a stream running through a city to tide water, as they should deem necessary in establishing a system of drainage, the sufficiency of a culvert on the stream previously made by the city under a street, and included in the system adopted by them, is to be determined by the commissioners; and the city is not liable to a riparian owner above for an overflow caused by the culvert's obstructing the increased flow of the stream resulting from the changes made by the commissioners in its channel.

TORT, for injuries to the plaintiff's property caused by the overflow of Spot Pond Brook in Malden. Trial in the Superior Court, before *Dewey*, J., who allowed a bill of exceptions, in substance as follows.

There was evidence tending to prove the following facts. Spot Pond Brook, the outlet of Spot Pond in Stoneham, after its junction with Ell Pond Brook, the outlet of Ell Pond in Melrose, passes under Pleasant Street in Malden by a culvert built by it in 1844, and afterwards empties into tide water in that city. After the St. of 1869, c. 378,* entitled "An Act relating to drainage in the towns of Malden and Melrose," was duly accepted by those towns, the county commissioners of Middlesex proceeded in 1871 to act under its provisions, and made due return of their doings. This return, which was dated December 21, 1875, recited that a petition was presented to such county commissioners in January, 1871, asking for the "drainage of lands in Malden and Melrose, and removing obstructions in brooks and streams in said towns between Ell Pond in Melrose and Spot Pond in Stoneham to the tide water in Malden"; that the commissioners thereupon ordered that a dam on Spot Pond Brook be removed by an agent appointed for that purpose, and that "the streams or brooks named in said act of 1869 should be located, and their courses and widths described, and the work of surveying and engineering the same" should be intrusted to the same agent. This agent made a report to the commissioners, reciting that the dam had been removed, and the drains "widened, straightened, and excavated,"

---

* The first section of this act is as follows: "The county commissioners of the county of Middlesex are hereby authorized and directed to take and lay out such land, watercourses, and water rights, dams, and other real estate, or interests or easements or rights therein, on or adjoining the streams or brooks running from Ell Pond in Melrose and Spot Pond in Stoneham to the tide water in Malden, as they shall deem necessary for the purposes of proper drainage and the public health, and they are also authorized, for the same purposes, to control the damming up and letting off the waters of said ponds ; and they may change, widen, straighten, and deepen the channels of said brooks or streams, and remove all dams and other obstructions therefrom, and use and appropriate said brooks or streams in such manner as they shall deem necessary for the purposes aforesaid; and if any person shall sustain damages to his property by reason thereof, and shall fail to agree upon the amount of the same, and to effect a settlement therefor with said commissioners, which they are hereby authorized to make, the same shall be determined, assessed, and collected in the same manner as now provided by law for the determination, assessment, and collection of damages in the laying out of highways."

and giving the location of the various drains by courses and distances, including Spot Pond Brook on both sides of Pleasant Street, which brook was described as "laid out twelve feet wide." The return of the commissioners, after setting out the agent's report, stated that the " commissioners do now incorporate into (and make the same a part of this return) the above report of the acts and doings of their agent in removing the dam and obstructions, and deepening and straightening and widening the channels of said brooks and streams, and they do also adopt the above location of the said brooks and streams and drains as made in the above agent's report."    The report concluded by reciting that " the town of Malden is to keep in repair and maintain that part of the drain within the limits of that town; and Melrose to maintain and keep in repair that part within the limits of the town of Melrose."    Neither the culvert under Pleasant Street, nor Spot Pond Brook below that point, was changed by the commissioners in carrying out the system of drainage adopted by them.    In February, 1886, there was an extraordinary freshet, caused by rain and melting snow and ice; and the increased flow of Spot Pond Brook due to the changes made by the commissioners, being obstructed by the Pleasant Street culvert, overflowed its banks above that point.    The plaintiff, who was the owner of mill property on that stream above Pleasant Street, was damaged therein by this overflow, and contended that the culvert was insufficient in size, and that its insufficiency was the proximate cause of the overflow, and consequent damage to his property.

The defendant, among other requests for instructions to the jury, presented the following:  "1.  That on the whole evidence the plaintiff is not entitled to a verdict.    2.  That by virtue of the St. of 1869, c. 378, and its acceptance by the towns of Malden and Melrose, and the acts of the county commissioners in pursuance of the authority vested in them by said act, the defendant is not responsible for any damage that may have arisen from any defect in the construction of the culvert under Pleasant Street, in respect to its size or course."

The judge refused so to instruct the jury, but instructed them, among other things, as follows: " It was the duty of the city to have and maintain at Pleasant Street such a culvert as to

size, and in other respects, as would carry off the water with reasonable freedom, and not obstruct and set it back on the lands of the riparian proprietors above; and it was also the duty of the city to use due and reasonable care to keep the culvert free from obstructions which would materially hinder and prevent the free flow of water through it. . . . This would not only include all ordinary freshets usually occurring in the spring or fall, but would also require the culvert to be sufficient for the water of greater freshets than the usual spring or fall freshets, namely, such freshets as have been known to occur once in several years, though not at regular intervals, and which could reasonably have been anticipated. . . . The city was obliged by law so to maintain and care for the culvert that it should be reasonably sufficient, according to the requirements which I have stated, having reference to the condition of the stream and all the lawful structures upon it, and such lawful changes in the character of the stream as might take place and could reasonably be foreseen and provided for. . . . It is suggested, and claimed upon the evidence, that the effect of the alteration which the county commissioners made in the streams is such that in times of high water the water flows off more freely, comes down the stream in larger volume, and so makes a greater demand upon the capacity of this culvert. . . . Was the change of such character as to require any alteration or enlargement of the culvert? And, if so, ought the defendant in the exercise of reasonable and ordinary care to have appreciated and known it? I think the law to be — and it is what I give to you for the purposes of this case — that the defendant was bound to use reasonable and ordinary care with reference to the circumstances of the case, as those circumstances were known, or ought reasonably to have been known by it; and if there was this change in the condition of the stream, that is, a permanent change lawfully brought about, then that change was part of the body of facts and circumstances with reference to which the defendant was called upon to act, and with reference to which, under the rule of reasonable and ordinary care and diligence, its conduct is to be judged."

The judge also submitted four questions to the jury, of which the first, second, and fourth, with the answers thereto, are as

follows: 1st. Was the freshet which occurred in February, 1886, at the time of the damage to the plaintiff, an extraordinary freshet, one that was marked and unusual in degree, beyond common experience, greater than freshets known to occur, though only once in several years, and at no regular intervals, and so excessive in character that it could not reasonably have been anticipated? Answer. No. 2d. Was the culvert in the condition in which it was at the time of plaintiff's alleged injury, in February, 1886, sufficient to provide for the passage of the water in its high or low annual stages, whether open or frozen or carrying off floating ice, including ordinary annual freshets and also the water of greater freshets than the usual spring and fall freshets, namely, such freshets as have been known to occur once in several years, though at no regular intervals, and which could reasonably have been anticipated? Answer. No. 4th. Would the culvert have been sufficient under the conditions and circumstances referred to in the second question, apart from any changes in the stream and flow of water that may have been produced by the action of the county commissioners under the statute of 1869? Answer. Yes.

The jury returned a verdict for the plaintiff; and the defendant alleged exceptions.

*A. Hemenway & A. H. Wellman*, for the defendant.

*B. E. Perry & G. H. Perry*, for the plaintiff.

W. ALLEN, J. The answers of the jury to the first, second, and fourth questions put to them show that the culvert was sufficient to discharge all the water of the brook in its natural condition, even in times of extraordinary freshets, and that it was insufficient to carry off all the water that came to it in the flood of 1886 only in consequence of the increased flow of water caused by the changes in the stream made by the county commissioners under the St. of 1869, c. 378. The culvert was made in 1844. The changes made by the county commissioners, consisting of removing a dam and other obstructions, and straightening and widening the bed of the brook and its tributaries, were ordered in 1871, and were completed and established in 1875. These changes increased by artificial means the flow of water in the brook, and the culvert was inadequate to discharge the water of the extraordinary flood of 1886, but would have

been sufficient had it not been for the changes in the stream and in the flow of water produced by the action of the county commissioners. The jury were instructed to the effect that the defendant was bound to adapt the culvert to such increased flow of water, and was liable if lacking in reasonable diligence to know of and provide for the effect of the change.

Spot Pond Brook ran from Spot Pond in Stoneham to tide water in Malden. Ell Pond Brook, an outlet of Ell Pond in Melrose, was a tributary to it, and below the junction the brook crossed Pleasant Street by the culvert in question.

The St. of 1869, c. 378, gave the control of the ponds, and the streams or brooks running from them to tide water, to the county commissioners for purposes of drainage and the public health, and authorized them to " change, widen, straighten, and deepen the channels of said brooks or streams . . . in such manner as they shall deem necessary for the purposes aforesaid." Under this authority, the commissioners, among other things, ordered " that the streams or brooks named in said act of 1869 should be located and their courses and widths described," and they were accordingly located, and widened, straightened, and excavated, under an agent appointed by the commissioners, and his report of his doings and of the location of the brooks and streams and drains was adopted, the courses, distances, and widths being given. Spot Pond Brook was located twelve feet in width. No change was made in the culvert by the commissioners, and it was stated at the argument that no changes were actually made in the brook below Pleasant Street, although that part of the brook was included in the location. It was the changes made in the brooks above Pleasant Street that brought the increased quantity of water to the culvert in times of freshet, and the question is whether it was the duty of the town to enlarge the culvert to meet the artificially changed condition of the brook.

It is very clear that the town was not obliged to provide a passage across the highway for water brought artificially to it by riparian proprietors on the stream above, whether brought by a separate channel or mingled with the natural waters of the stream, nor to provide for occasional unnatural volumes of water caused by artificial changes in the channel of the stream by such proprietors. The duty of the town to the plaintiff was so to

construct and maintain the highway as not by obstructing the natural watercourses to violate his right as a riparian proprietor upon it. *Perley* v. *Chandler*, 6 Mass. 454. *Rowe* v. *Granite Bridge Co.* 21 Pick. 344. *Perry* v. *Worcester*, 6 Gray, 544. *Sprague* v. *Worcester*, 13 Gray, 193. *Wheeler* v. *Worcester*, 10 Allen, 591.

In this case the change in the stream above the culvert was not made by the proprietors upon it, but by express authority of the Legislature, and for the public good; and the argument is that the duty of the town to make its public ways conform to such a change is implied. If the action of the Legislature had been only to improve the channel of the brook above the culvert, excluding that, and the manifest effect of the improvement provided for had been to render the culvert insufficient, the argument would deserve serious attention. But jurisdiction over the culvert was given to the county commissioners, and they were directed to lay out such watercourses on or adjoining the brook from the pond to tide water as they should deem necessary, and they exercised the authority given to them over the brook. The petition upon which they acted, as stated in their decree, was for removing obstructions in the stream from Spot Pond to tide water. The object of the statute was to utilize the brooks for drainage into tide water, and the commissioners established a system of drainage which included the culvert in question. It is immaterial if the courses and distances of the drains located did not include the culvert, or if they did no work upon the channel below the culvert. Whatever they did was for the purpose of securing a more free and unobstructed flow of the stream to tide water, and if they made no change in any part of it, the reason must have been that they deemed such part sufficient. It was for them, and not for the town, to determine upon the sufficiency of the culvert as a part of their system of drainage.

*Exceptions sustained.*