INHABITANTS OF MELROSE *vs.* JOSEPH H. CUTTER & another.

Middlesex.   March 22, 1893. — September 7, 1893.

Present: FIELD, C. J., ALLEN, HOLMES, MORTON, & LATHROP, JJ.

*Location of Drain — Easement — Maintenance of Drain — Right of Town to bring Action — Passageway — Erection of Building over Drain — Public Health — Damage as an Element in Injunctions.*

By St. 1869, c. 378, county commissioners were authorized to control the water from the E. Pond in the town of M., and the S. Pond in the town of S., for the purposes of drainage and the public health, and were directed to change, widen,

straighten, and deepen the channels of the brooks, and remove dams and obstructions therefrom. They were also to determine what proportion of the whole expenses should be assessed upon the towns of M. and N. respectively. Under the direction of the county commissioners the E. brook was laid out as a drain twelve feet wide in the town of M., and that town was directed to keep it in repair. This the town did, spending money annually in clearing it out. The town having voted that the selectmen cause the removal of all obstructions and erections within the line of E. drain, a bill in equity was brought against an abutter to compel him to remove a building erected over the drain and to restore the walls of the drain as they were before he had interfered with them. *Held,* that only an easement was granted in the location; that the town was bound to maintain the drain and keep it in repair, and that it was the proper party to bring the bill; that the contention of the plaintiff that there was a two-foot passageway or place for deposit on each side of the drain which would be obstructed was unwarranted; that the plaintiff, however, was entitled to relief, as there was nothing in the act indicating any intention to limit the enjoyment of the easement to the right to maintain a covered drain, (the rule being, in taking land for public purposes, that the uses are not to be extended beyond those reasonably incident to those purposes,) and as the act was a measure in the interest of the public health, and that the authorities might maintain the drain as an open or covered one as they deemed best.

In order to entitle a person to an injunction, it is not necessary that it should appear that he has sustained actual damage.

BILL IN EQUITY praying for an injunction to restrain the defendants, Joseph H. Cutter and Seth E. Benson, from continuing the erection of a building over the drain known as Ell Pond Brook; that they be ordered to remove so much of the same as had already been built from within the twelve feet, the width and line of the drain, and to restore the walls of the drain as they were before being interfered with by the defendants.

The bill alleged that to protect the plaintiff from the waters of Ell Pond Brook, which runs through the plaintiff town and the city (formerly the town) of Malden, St. 1869, c. 378, was passed, the first section of which is as follows :

" The county commissioners of the county of Middlesex are hereby authorized and directed to take and lay out such land, watercourses, and water rights, dams, and other real estate, or interests, or easements, or rights therein, on or adjoining the streams or brooks running from Ell Pond in Melrose and Spot Pond in Stoneham to the tide-water in Malden, as they shall deem necessary for the purposes of proper drainage and the public health; and they are also authorized, for the same purposes, to control the damming up and letting off the waters

of said ponds.  And they may change, widen, straighten, and deepen the channels of said brooks or streams, in such manner as they shall deem necessary for the purposes aforesaid."

That pursuant to said statute the commissioners laid out the brook as a drain by certain courses, certain portions twenty-five feet wide, certain other portions sixteen feet wide, and in the northerly portion of the town of Melrose twelve feet wide, and directed that the town maintain and keep in repair that portion within its limits ; that the town had expended and was expending a large sum of money to maintain and keep open and in repair the drain for the width laid out by the commissioners, and was obliged from time to time to enter in and dig out the brook, and remove the growth and accumulations therein for its entire length within the limits of the town ; that the defendant Cutter, under lease and authority of the defendant Benson, the owner of land abutting on the drain, was wrongfully building on and over the drain on the north side of Grove Street, and west of Main Street, a wooden frame building ; and that in the process of construction they had caused to be thrown down into the drain stones placed for the embankment thereof, and by their acts were covering the drain and interfering with the maintenance of the same and with the flow of water therein.

The defendant Benson in his answer admitted that the town had paid its proportion towards removing the dam and widening and excavating the drain, and made some expenditure in repairing the drain, but denied that it had ever dug out the brook for its entire length within the town.  He denied that the county commissioners were authorized by the act to order the town to maintain and keep in repair those parts of the brook or drain within its limits.  He admitted that he made a lease of a portion of the premises to Cutter, and that Cutter commenced to build a small wooden building on the premises, and that a corner of the building projected over the drain, but he denied that Cutter in the process of construction had caused to be thrown into the drain stones placed for the embankment thereof, or that he had by his act interfered with the maintenance of the drain or with the flow of water therein.  He averred that the corner of the building covered only a small portion of the drain, and that it did not interfere with the flow of the water in the stream,

or with entering the drain to remove the obstructions; that in obedience to the requirement of the town he had excavated the drain to the width of twelve feet through his premises, removed all obstructions which would interfere with the free flow of the water, and constructed on each side a faced stone wall, substantially built, for a considerable part of the distance being a cemented wall; that it was essential to any profitable use or enjoyment of his premises that he should have the privilege of covering the drain wholly or in part with buildings; and that it would not in any way interfere with or obstruct the drain or prevent the keeping of the drain free from obstructions, but on the contrary would protect the drain from obstruction, prevent the growth of vegetation therein, as the flow of water was small during a large part of the year, and would be a benefit and improvement to all the property in that vicinity as well as to the premises of the defendant. He denied that the town had any title to or interest in the premises, or any interest in the subject matter of complaint in the bill which entitled it to bring the bill, or that it was in any way entitled to interfere for the protection of any easement in the premises for the public use or benefit. He averred that the only right or title in the premises acquired by the action of the county commissioners pursuant to the statute was an easement for the purpose of drainage for the public benefit; and that neither he nor Cutter acting under the lease had in the erection of the building done any act which interfered in any way with the reasonable enjoyment of the easement by the public.

The defendant Cutter in his answer denied that under the authority of the act the commissioners directed that the town maintain and keep in repair that portion of the drain within its limits. He admitted the erection of a corner of the building over the drain, but denied the throwing of stones into the drain, or interference with its maintenance and with the flow of water therein. He also denied that any rights, privileges, or easements of the town had been interfered with.

Trial in the Superior Court, before *Hammond*, J., who dismissed the bill, and, at the request of the plaintiff, reported the facts and findings to this court in substance as follows.

The county commissioners in 1871 ordered " that the dam at

the upper privilege, or Dyer's Mill privilege, be removed, and in such manner that the water standing above the said dam may pass away with as much facility as may comport with the safety of the lower privilege and the banks above, and that the brook and stream be permitted to flow without obstruction from Ell Pond in Melrose and Spot Pond in Stoneham to a point below the present (Dyer) dam and to the water basin or pond of the lower Bartlett privilege." Agents appointed by the commissioners took down the dam, and the drains were widened, straightened and excavated at an expense of about seven thousand dollars. The towns of Malden and Melrose each paid about one half. The Ell Pond drain was located as follows: " Beginning at the west line of the location of the Boston and Maine Railroad, near the southerly line of Wyoming Avenue; thence following the present location across Wyoming Avenue, the Boston and Maine Railroad, Berwick Street, and land of J. Worthen, to the north end of said Worthen's building; thence commencing at a mark on the north end of said Worthen's building, 18.92 feet from the northwest corner thereof; . . . thence north 13° west 30.65 feet to Ell Pond. The above described line is the centre line of said drain, and said drain is laid out twelve feet wide. . The stakes on each side of said drain are driven eight feet from said centre line, but the location is six feet from said centre line." The commissioners determined that the cost of proceedings should be paid by the town of Melrose, that for the equalization of the burden of expense for the work performed as compared with the benefits received the town of Melrose should pay to the town of Malden two hundred dollars, and that the town of Malden was to keep in repair and maintain that part of the drain within the limits of that town, and the town of Melrose that part within the limits of Melrose.

Annually since that time the town of Melrose has expended money in clearing out sand, muck, weeds, and débris lodged in the brook from such portions thereof as are within the limits of the town, in accordance with the order of the commissioners.

The town voted, on March 7, 1891, " that the selectmen be directed to cause and compel the removal of all obstructions and erections placed by any parties within the lines of Ell Pond Brook and drain as laid out by the county commissioners, and here-

after prevent the placing of any obstructions in said drain; to widen, where necessary to allow the free flow of the water, the culverts under the roadways; to clear out the said brook or drain, and protect its walls by stones where necessary; to request and secure by all proper means the removal of obstructions in said brook and drain within the city of Malden; also to secure by all proper means the enlargement, if deemed necessary by them, of the culvert under the Boston and Maine Railroad, and of the brook and drain under any building or erection within the lines of the lay out by the county commissioners, and to do all things proper, legal, and requisite to allow the said brook to flow freely and carry off all the water coming therein, instituting if necessary any proper legal proceedings to secure and maintain the said brook and drain free and unobstructed, as laid out by the county commissioners."

Wherever the highways crossed these brooks culverts have been built covering the brooks, and in one highway, where the Spot Pond Brook runs within the located limits of the highway, the brook is covered for a space of about four hundred feet, with two manholes in it dividing the four hundred feet substantially so that there are openings into the brook about every hundred feet. The stream has been widened by the defendant Benson where it runs through his land, being several hundred feet, to the full width of twelve feet, and retaining walls have been built five or six feet high by him.

The judge found that the retaining walls were built substantially of stone, part of which were cemented, and part not; that at other points where it passed under the highways the stream had been widened the full width of twelve feet by the town, but not throughout its whole length, it being generally about eight feet wide as left by the county commissioners; that the building which the respondents started to erect was a one-story plain wooden structure, to be used as a blacksmith shop, forty feet by twenty-five feet, resting diagonally over the stream; that the erection of the building at that place would not interfere appreciably with the flow of the stream, nor would it interfere appreciably with the clearing out of the stream; that at one time since 1869 there was an unusual flood of water, raising the stream to a height above its banks and over the highway near

the place of this building; that at no other time had it so over-
flowed; that since that flood the culvert had been somewhat
widened below; that the stream from time to time was more
or less obstructed by the accumulation of sand and rubbish,
and had to be cleared each year; that the usual method of
clearing out the brook was by taking out the débris and putting
it on the bank; that the respondents claimed that it would be
an advantage to cover the stream entirely so as to keep rubbish
from getting into the stream, and weeds from growing in it;
that no special damage was shown to any inhabitant at the hear-
ing, but one of the witnesses testified that when the stream over-
flowed the land it did some damage as a natural consequence of
such overflow, and that if the brook was generally covered, pre-
venting the town from getting at it to clear it out, it would
be very difficult to clear it out, and would cause extra expense
and damage to the town.

*F. S. Hesseltine,* for the plaintiff.

*J. F. Wiggin,* (*B. M. Fernald* with him,) for the defendants.

MORTON, J. The plaintiff concedes that only an easement was
granted in the location. We also think that the town is bound
to maintain the drain and keep it in repair, and that it is the
proper party to bring this bill. *Clark* v. *Worcester,* 125 Mass. 226.
*Needham* v. *New York & New England Railroad,* 152 Mass. 61.

The drain is for the benefit of Melrose and Malden, and within
their respective limits belongs to them. They naturally would
be expected to maintain it and keep it in repair. Unless they
are to do so, there is no provision for its maintenance and repair.
The county commissioners have nothing further to do with it after
locating, constructing, and paying for it. We think the inten-
tion was that it should be kept in repair and maintained by
Melrose and Malden.

The court found that, if the brook were generally covered, it
would be very difficult to clear it out, and cause extra expense
and damage to the town. If the drain belongs to the town, and
the town has the right to maintain it as an open drain, the pro-
posed action of the defendants will directly interfere with the
rights of the town as a town, and render it the proper party to
bring this bill. *Needham* v. *New York & New England Railroad,*
*ubi supra.*

The principal contention of the plaintiff rests on the ground that there was a two-foot passageway or place for deposit on each side of the drain which would be obstructed. But although it is said in the location that the stakes are driven eight feet from the centre line, it is also said that the drain is laid out twelve feet wide, and that the location is six feet from the centre line. It is found, it is true, that the drain was widened by the defendant Benson without, so far as appears, any right to do so, or any authority from the town, to the full width of twelve feet, which implies that it was constructed originally of less width than the location. But that does not show the existence of a passageway under and as part of the location.

There is, however, another ground on which we think the plaintiff is entitled to the relief which it seeks. If the defendants have a right to build and maintain their shop over the drain in the manner in which they have done or propose to do it, other abutters on the drain have a like right. If an abutter can cover the drain with a building he can cover it with stone. The result would be that the easement granted by the Legislature would be limited to the right to build and maintain a covered drain. We find nothing in the act indicating any intention on the part of the Legislature to limit in such a manner the enjoyment of the easement granted. It is a general rule, that, in taking land for public purposes, all uses of the land necessary or incident to the enjoyment of the public right are included. *Brainard* v. *Clapp*, 10 Cush. 6. The uses thus included are not to be extended beyond those reasonably necessary and incident to the purpose for which the land is taken, but are to be confined to them. *Clark* v. *Worcester*, 125 Mass. 226.

If a fee is not taken the landowner may make any use of his premises which will not interfere with the enjoyment of the public right. Usually, however, damages are assessed on the theory that the public use will be exclusive. There is nothing to show that such was not the fact in the case.

Further, the act in question was a measure in the interest of the public health. In the absence of anything in it limiting its scope to the maintenance of a covered drain, there is abundant reason for construing it so as to give the public authorities the right to maintain the drain as an open or covered one as they

may deem best.    If the drain had been constructed and maintained as a covered drain, as was the case in *Clark* v. *Worcester*, then it is possible that the defendants could rightfully build over the location.    That, however, is not the case.

We think the conduct of the defendants constitutes an invasion of the rights of the plaintiff, and that it is entitled to the injunction which it seeks.    It is not necessary that it should appear that the plaintiff has sustained actual damage.    *Stowell* v. *Lincoln*, 11 Gray, 434.    *Harrop* v. *Hirst*, L. R. 4 Ex. 43.

*Decree dismissing bill reversed, and decree to be entered for plaintiff.*