INHABITANTS OF MELROSE *vs.* IRA HILAND.

Middlesex.    November 19, 1894. — March 4, 1895.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & BARKER, JJ.

*Maintenance of Drain — Town — Contract — Fraud — Action — Ratification
of Act of Selectmen.*

A town has power to widen a common drain, or to clear it from obstructions,
although it is upon private land and outside the limits of any highway.

The town of Melrose is bound to maintain and keep in repair, within its own
limits, the drain made by the county commissioners under the authority of
St. 1869, c. 378.

If county commissioners lay out a common drain twelve feet wide in a town, but
actually build it at a certain place therein only eight feet wide, the town has
power to enlarge the drain to the width of twelve feet, if such enlargement is
reasonable and necessary for the purpose of proper drainage.

It is lawful for a town to take from the owner of land therein, through which a
common drain is laid, an agreement for reimbursement of the cost to the town
of enlarging the drain on his premises.

The bringing of an action by a town upon an agreement, taken by its selectmen
from the owner of land therein through which a common drain is laid, for reim-
bursement of the cost to the town of enlarging the drain on his premises, is
sufficient evidence of acceptance of the agreement, and of a ratification of the
act of the selectmen in taking it.

CONTRACT, to recover the amount expended by the plaintiff
town, at the defendant's request, in removing obstructions in
a common drain called Ell Pond Brook upon the defendant's
premises, in raising and supporting a building thereon, and in
widening the culvert thereunder.    Trial in the Superior Court,
before *Dunbar*, J., who reported the case for the determination
of this court, in substance as follows.

Evidence was introduced by the plaintiff tending to show
that the county commissioners of Middlesex, under and by vir-
tue of St. 1869, c. 378, and St. 1870, c. 228, which acts, it was
admitted, had been accepted by the plaintiff, took and laid out
Ell Pond Brook as a drain, from the southerly line of Wyoming
Avenue, under the Boston and Maine Railroad and under the
premises of the defendant and within the plaintiff town, at the
width of twelve feet up to Ell Pond, and by their report ordered
that the plaintiff town maintain and keep in repair that part
within the limits of the town; that from below the defendant's

premises up to Ell Pond the commissioners did not dig out and construct the drain of the full width of twelve feet; that prior to the doing of the work under the defendant's premises for which this action is brought, the drain did not carry off all the water, but it was dammed back at the defendant's premises in times of freshets, flooding the basement of the defendant's store and overflowing the streets above; and that at the town meeting in March, 1891, under the following article in the warrant, "To see what action the town will take in the matter of widening, deepening, and straightening Ell Pond Brook, enlarging the culverts over the same and removing any and all obstructions now existing therein," the town of Melrose passed the following vote: "That the selectmen be directed to cause and compel the removal of all obstructions and erections placed by any parties within the lines of Ell Pond Brook and drain as laid out by the County Commissioners, and hereafter prevent the placing of any obstructions in said drain; to widen where necessary, to allow the free flow of the water, the culverts under the roadways; to clear out the said brook or drain, and protect its walls by stones when necessary. . . . Also to secure by all proper means the enlargement, if deemed necessary by them, of the brook and drain under any building or erection within the lines of the layout by the County Commissioners."

There was further evidence tending to show that the selectmen proceeded under the above vote to widen the culverts under the highways, and to secure the removal of all obstructions within the lines of the twelve feet as laid out under the defendant's building and the Boston and Maine Railroad premises, just below the defendant's premises; and that on July 10, 1891, they caused a letter to be written by their chairman to the defendant, notifying him of the above vote, and of their intention to proceed under it, and stating " that work will be commenced by the contractors as soon as possible, and it is desirable to know whether you wish to do the work which comes under your building yourself in your own way, and so that it may correspond with the plans of Walter C. Stevens, civil engineer of the town of Melrose, or whether you would prefer to have the work done by the contractors to whom we shall award the contract, you paying your proportionate part of the cost of the work "; that Levi S.

Gould, the chairman of the board of selectmen, had an interview with the defendant, and said to him that it was necessary to have all the obstructions removed, and the walls of the culvert built to the full width of twelve feet to allow the water to flow off, and that the selectmen would be glad to have the defendant do the work in conjunction with the town, or that the town would do the work if the defendant would pay his proportionate part for the work done on his premises; that the defendant desired to know how much the amount would be, and Gould said he would ascertain; that on July 13 he wrote to the defendant informing him that his proportion of the cost of the work would be $350, and requesting him to state whether it was satisfactory, and whether he would authorize the selectmen " to go on with the work"; that he received in reply from the defendant a letter, acknowledging the receipt of Gould's letter, and further stating that " the same is satisfactory to me, and I agree to pay the sum of three hundred and fifty dollars, $350, therein named on completion of the work in a manner satisfactory to the engineer of the town of Melrose, Walter C. Stevens "; and that subsequently, after the work was finished, Stevens, the engineer, put the following certificate on the back of the agreement: " I hereby certify that the work done on the culvert, under the building at Wyoming owned by Ira Hiland, is done to my satisfaction."

There was also evidence tending to show that the contractor to whom the work was let refused to do the work; that Gould saw the defendant and informed him of that fact, and told him that the town would do the work under the superintendence of one Ellis, the highway surveyor, and would do the work under the defendant's premises, removing all the obstructions, and construct the drain to the full width of twelve feet, keeping an account of the expense of the work done on his premises, if he would agree to pay the town the amount expended by it thereon, which he assented to and agreed to do; and that, on this understanding, the selectmen decided to do the work, and ordered it done under the superintendence of the highway surveyor, and approved the bills.

It was also in evidence, that, about the time the work was to be begun under the premises of the defendant, he saw Ellis, and it

being found that the sills were decayed and the building had settled down upon the culvert, it became necessary to raise the building; that the defendant tried to get a man to raise and support the building, but, failing to find him, he asked Ellis to get some raiser of buildings to come there and have the town raise the building as a necessary part of the work that was to be done, and said that he would pay the town whatever it cost to raise and fix the building so as to keep it up and make it firm; that Ellis replied that he had no authority, but would see the selectmen; and that he reported the matter to the selectmen, who consented to do the necessary work upon the agreement of the defendant to pay the town for the same.

There was also evidence that the defendant was present from time to time during the progress of the work, and expressed his approval of and satisfaction with the work as it was being done; that, when it was completed, the chairman of the board of selectmen sent to the defendant a letter, with a bill for $505.57 for the work so done; that he saw the defendant afterwards, and the defendant objected to paying the bill, and said he would pay $350; and that the defendant subsequently wrote him a letter containing the following: " I have always been ready and willing to pay what the contract calls for, providing the work was done according to the specifications and materials called for by the engineer of Melrose, Walter C. Stevens. I am not satisfied with the work, and cannot accept it as complying with contract and specifications."

It was in evidence that, prior to the doing of the work, the selectmen had been called to the defendant's premises by the flooding of the water therein owing to the obstructions which existed under the building and under the Boston and Maine Railroad. Evidence was introduced of the amount of money expended by the town in raising the building, putting in the trusses and sills under the same, and making the culvert the full width of twelve feet; and it was shown that the bills were approved by the selectmen, audited by the town auditor, and paid by the town.

There was evidence tending to show that the defendant's premises consisted of a wooden building, under which the brook ran, and a strip of land twelve feet wide between the building

and Berwick Street, under which the brook ran under a covered culvert. It was admitted that the work was not done in accordance with the specifications of Stevens; and that he did not approve or accept the work upon and under the defendant's premises between his building and Berwick Street, but did accept that done under the building as satisfactory.

The defendant denied that he made the agreement as testified to by the plaintiff, and testified that the work done upon his building would not have been needed except for the work done in widening the brook under his store; that Gould told him that the whole job of clearing the culvert the full width of twelve feet, including that under his premises, was let to a contractor, and was to be done under the superintendence of Walter C. Stevens, the engineer of the town, and further told him, if he did not agree to do the work himself, that the town would do the work, and that he would be liable and be compelled to pay what the work under his premises should cost; and that the defendant, relying upon the statements of Gould, and also the statements in the letters of July 10th and 13th, wrote the letter and agreement above recited; and he contended, and offered evidence to show, that the work had not been done according to the specifications, and to the satisfaction of Stevens; and that the defendant had not waived either of those conditions.

At the conclusion of the evidence, the defendant requested the judge to rule that, " if any contract was shown by the evidence, it was a contract made by the defendant with Gould, and not with the plaintiff, and that, upon all the above evidence, the plaintiff was not entitled to recover "; and to direct a verdict for the defendant. The judge refused so to do; and the defendant excepted.

The judge instructed the jury, among other things, as follows:

" It will be necessary for the plaintiff, in order to recover, to satisfy you that the contract which it made with the defendant was substantially the contract relied upon in its testimony; and that the work was performed substantially in accordance with that contract. . . .

" We come then to the question, Was the agreement which was made by the selectmen with the defendant to do the work upon these premises, widen the brook under the premises, and

do the other work which was done there, an agreement to do work which was reasonably necessary to carry out the purposes contemplated by this act of the Legislature, and contemplated by this vote of the town? The selectmen had authority under that vote to make a contract with the defendant that he should pay what it cost the town to do the work upon his premises, provided the work which was done was reasonably necessary to carry out the intention of the act, and of the town stated in this vote of the town meeting.

" Now, what was reasonably necessary? And that is a practical question. Was it reasonably necessary to widen the channel of the brook within the limits of the laying out? If it was, whatever work was done in the widening of the channel of that brook within the limits laid out by the county commissioners was proper to be done, if it was done with the consent of the defendant, as it is admitted here it was. Was it necessary to raise the building? If it was necessary to effectuate the purpose, then the building might be raised; and the expense thus reasonably incurred was a proper expenditure. . . .

" If the defendant made this contract to which I have referred, and if this work was done by the town, the town may recover for the work thus done. There is a further question in this case, and that is the question of ratification. It is claimed that there was no authority on the part of the selectmen to do this work. It appears that after the work was done — or there is evidence tending to show, I should say, that after the work was done — these bills were presented which were testified to by one of the witnesses, and there is testimony that those bills were paid by the town after the performance of the work. Now payment of the indebtedness incurred by the acts of an agent with knowledge of the facts is evidence from which the jury may infer that there is a ratification of the acts that the agent performed, and that is the application to be made of that principle in this case. . . .

" In order to recover in this case, the plaintiff must show that the work which was done there was done under and in pursuance of the contract made with the defendant, and of the request by him to do it."

The defendant requested the judge to add the following:

" That the defendant's request to do the work when he was under the impression that he was obliged to do it, not leaving it to his own volition, would not form a contract with the town." The judge declined to make this addition; and the defendant excepted.

The defendant also excepted to the ruling that the town had authority to do the work.

The jury were directed to find, first, if the action of the selectmen in doing this work was ratified by the town; and, secondly, if they found a verdict for the plaintiff, to find specially what was the cost of the work done upon the premises of the defendant which was not reasonably necessary in carrying out the purpose stated in the act and in the vote of the town.

To the first question the jury answered, " Yes," and to the second, " Nothing "; and found for the plaintiff in the sum of $549.82.

If the ruling excepted to was wrong, or if any of the requests of the defendant which were refused should have been given, a new trial was to be granted; otherwise, judgment was to be entered on the verdict.

*R. Lund,* for the defendant.

*F. S. Hesseltine,* (*N. F. Hesseltine* with him,) for the plaintiff.

ALLEN, J. 1. The defendant contends that the town had no power to widen the drain or clear it from obstructions, because it was upon private land, and outside the limits of any highway. We cannot see how this fact makes any difference. Drains may be laid through private lands, as well as in highways. St. 1869, c. 111, § 1. Pub. Sts. c. 50, § 1. If a common drain runs through private land, the power and duty of the town to repair it are the same as if it were in a highway. *Bates* v. *Westborough,* 151 Mass. 174. Such power and duty might even be made to extend beyond the limits of the town. *Commonwealth* v. *Newburyport,* 103 Mass. 129. *Carter* v. *Cambridge & Brookline Bridge,* 104 Mass. 236. *Coldwater* v. *Tucker,* 36 Mich. 474. Dillon, Mun. Corp. (4th ed.) § 446.

2. The defendant further criticises the decision in *Melrose* v. *Cutter,* 159 Mass. 461, and contends that no power to repair this drain was given to the town by St. 1869, c. 378, and that the county commissioners alone had this power and duty, and could

not delegate it to the town. The county commissioners were to do the work in the first instance, and might assess betterments on real estate; and by § 3 they were to assess the cost on the Boston and Maine Railroad, and on the towns of Malden and Melrose. The statute was subject to acceptance by the towns, and was in fact accepted by the plaintiff, and also no doubt by Malden; see *Cochrane* v. *Malden,* 152 Mass. 365, 366; though the latter fact is not expressly stated in this case. The declared object of the work was "for the purposes of proper drainage and the public health." It was designed to make a drain beneficial to both towns, as well as to the railroad, and to assess the cost in part upon real estate benefited, and upon the railroad company, and the rest upon the two towns. The statute was not very carefully drawn, and has been fruitful of litigation, and heretofore the court had occasion to say of it, "Much that is necessary in order to adapt the provisions of the General Statutes in substance and effect to the new conditions of this special act, must be left to necessary implication." *Phillips* v. *County Commissioners,* 122 Mass. 258. See also other cases growing out of this statute. *Phillips* v. *Middlesex,* 127 Mass. 262. *Cochrane* v. *Malden,* 152 Mass. 365. *Melrose* v. *Cutter,* 159 Mass. 461. It was not expressly declared in the statute how the drain should be maintained and repaired; but in *Melrose* v. *Cutter* we determined that the town within its own limits is bound to maintain and repair it. This would be clear under the decisions, if the drain had been originally laid out by the selectmen, under St. 1869, c. 111, § 1. It has often been held that after a drain has been built the care of it devolves upon the city or town, and the mayor and aldermen or selectmen in repairing it afterwards act as the agents of the city or town. *Child* v. *Boston,* 4 Allen, 41. *Emery* v. *Lowell,* 104 Mass. 13. *Murphy* v. *Lowell,* 124 Mass. 564. *Bates* v. *Westborough,* 151 Mass. 174. It would be a narrow construction of St. 1869, c. 111, § 1, and Pub. Sts. c. 50, § 1, to hold that this duty is limited to drains laid out by the mayor and aldermen or selectmen themselves. The work of making the drain could be more beneficially performed by the county commissioners; but, the drain being finished, it became a common drain, and was to be repaired like other common drains. We therefore remain satisfied with the decision in *Melrose* v. *Cutter.*

The decision in *Cochrane* v. *Malden*, 152 Mass. 365, is not opposed to the view here expressed. It was there held that the town was not liable for the damages done by the setting back of the water, in consequence of a culvert's not having been enlarged; that the county commissioners had settled the proper size of the culvert, and that the town might rest on their decision. The ordinary repairs of the drain, and the power of the town to enlarge the culvert, if it had voted to do so, were not brought in question.

3. It seems that the county commissioners, although they laid out the drain as twelve feet wide, actually built it at the place now in question only about eight feet wide; and the defendant contends that the town had no authority to enlarge it to the width of twelve feet. But the power to repair includes the power to make such enlargement, if reasonable and necessary for the purpose of proper drainage.

4. It was lawful for the town to take an agreement from the defendant for reimbursement of the cost of doing the work on his premises. *Arlington* v. *Cutter*, 114 Mass. 344. *Springfield* v. *Harris*, 107 Mass. 532. Dillon, Mun. Corp. (4th ed.) § 458, and cases cited. The defendant now contends that the agreement was obtained from him by fraud, or at least that there was evidence of fraud for the jury. But no such question is open upon the report. The nearest approach to raising a question of fraud was in the request for a ruling " that the defendant's request to do the work when he was under the impression that he was obliged to do it, not leaving it to his own volition, would not form a contract with the town." This suggested no question of fraud. We may add, that we find in the report no evidence of fraud.

5. The defendant contends that the town did not authorize the selectmen to take an agreement from the defendant for reimbursement. The agreement was for the benefit of the town, and the bringing of the action upon it is sufficient evidence of an acceptance of it, and of a ratification of the act of the selectmen in taking it. See *Arlington* v. *Cutter*, 114 Mass. 344.

If the work done had been beyond the authority of the town, the question would still remain whether the defendant could avail himself of that ground of defence. This question we need not consider.                    *Judgment on the verdict.*