GAGE, Secretary of Treasury, v. JUDSON et al.

(District Court, D. Connecticut. September 18, 1901.)

No. 1,159.

1. EMINENT DOMAIN—PROCEEDING BY UNITED STATES—VALIDITY OF AWARD.

In a proceeding brought by the secretary of the treasury to condemn land for an addition to a post office, the court was required under the local statutes of the state to appoint a committee of three to appraise the land and assess the owners' damages, subject to the approval of the court, which had power to set aside their award for irregularity. The district attorney and the attorney for defendants stated to the court that they had agreed upon two members of the committee and would agree upon the third, and they were directed by the court to notify the clerk. The names of the persons agreed upon were not reported to the court or clerk, and no further action was taken by the court until the filing of a report and award signed by three persons, designating themselves as arbitrators and so designated in a written submission signed by counsel. The district attorney had no special authority from the department to agree to an arbitration. Held, that the award was not binding on the United States, either as an award of arbitrators or of a committee, since the district attorney had no authority to submit to an arbitration or to select a committee, which could only be appointed by the court, whose action was not a delegation of authority to counsel to make such appointment, nor an appointment of unknown persons to be thereafter selected by counsel.

2. SAME—POWERS OF COMMITTEE OF APPRAISAL—ADMISSION OF EVIDENCE.

A committee appointed under the Connecticut statute to value land condemned for public use does not act strictly as a judicial tribunal, to find facts merely from evidence, but its members are selected largely with reference to their competency to appraise real estate and to form their conclusions from inspection and their own knowledge of values; and they must be allowed a wide discretion as to the kind of evidence they deem helpful and will receive.

3. SAME—EVIDENCE OF VALUE—PROFITS FROM PARTICULAR USE OF PROPERTY.

An award made by a committee appointed to appraise land condemned for public use will not be set aside because the committee refused to

receive evidence intended to show the probable profit which could be derived from the property by the erection of a particular kind of building thereon, where it admitted evidence to show that the location was suitable for such a building.

**4. SAME.**

The award of a committee fixing the value of land condemned for public use will not be set aside because of the exclusion of testimony offered by the owner as to the additional value of the land by reason of its surroundings or appurtenances, such as easements for right of way or the nearness of other property owned by him, which could be improved in connection with that taken, where the facts were shown, and may be presumed to have been duly considered by the committee.

This was a proceeding by the secretary of the treasury for the condemnation of land as a site for an addition to the post-office building in Bridgeport, Conn.

Francis H. Parker, U. S. Dist. Atty., and Allan W. Paige, for petitioner.

De Forest & Klein and Stiles Judson, Jr., for respondents.

TOWNSEND, District Judge. The respondent has remonstrated against the report of the committee finding the value of the land of the respondent sought to be taken. A writ of error was taken to the United States circuit court of appeals, and there dismissed on the motion of the petitioner. 39 C. C. A. 156, 98 Fed. 540. Afterwards a bill of exceptions was allowed and signed, which is as follows:

"Bill of Exceptions.

"(1) Upon the return of the mandate and summons upon the plaintiff's application to this court for the condemnation of the defendants' land, as appears by the files and records of this court, the parties appeared by attorney; the plaintiff appearing by C. W. Comstock, the United States attorney for the district of Connecticut. (2) On May 28, 1898, which was the day assigned for the appointment of the committee as prayed for, Mr. Comstock, the United States attorney, and the attorneys for the defendants Judson and Hicks, appeared and informed the court that the case would furnish no business at that time, as the parties would probably reach an agreement as to a committee. No action was taken by the court at that time. (3) On August 10, 1898, counsel for the plaintiff and the defendants Judson and Hicks, filed in court an agreement to submit the case to arbitration, dated June 8, 1898, and signed by C. W. Comstock, United States attorney, and by Robert E. De Forest, attorney for R. M. Judson, and also an award purporting to have been made by the arbitrators therein named, dated August 8, 1898. These papers are on file, and are, by reference, made a part hereof. (4) On October 4, 1898, an entry of the discontinuance of the case as to the defendants Hicks and Bishop was entered. (5) On October 5, 1898, counsel for the plaintiff appeared in court and stated that the government was satisfied with the award of the arbitrators, and moved that the award be accepted as to the said Judson, and that the case be discontinued as to the other defendants. (6) Thereupon I made entries in my private minute book as follows: 'Oct. 5. 517. Gage, Sec'y Treasury, vs. Judson. Award of $32,000 in favor of Judson, and U. S. is satisfied with award, and asks report be accepted and discontinue as to others. Order discontinuance granted. Balance continued.' 'Oct. 7. U. S. Gage vs. Judson. Award approved and accepted, $32,000.' (7) No entry was made on the docket of the court on either October 5th or 7th, no judgment or order was entered up at either of these dates, nor was the clerk instructed to enter up any such judgment or order. (8) Afterwards, during the following term, to wit, on the 3d day of January,

1899, upon the motion of the plaintiff's attorney, judgment was rendered, and the formal judgment file was signed by the court, as appears on file. (9) No objection was ever made, in this court or elsewhere, so far as appears, by the plaintiff, or any one else representing him or the government, to said award, or to any of the proceedings in the cause, until the 8th day of February, 1899, when the plaintiff brought his petition to reopen said judgment as on file. (10) On February 15, 1899, plaintiff amended his said petition, and on February 25, 1899, he filed a substituted petition as on file. (11) Upon motion of the defendant Judson, the court ordered the plaintiff, if he proposed to offer evidence in support of the allegations of paragraph 5 of his petition, dated February 6, 1899, and filed two days later, to state the names of the witnesses there referred to. (12) The case subsequently came on for a hearing upon the questions of fact and law presented by the plaintiff's substituted motion, dated February 24, 1899, and filed the next day. (13) After hearing the parties, by their witnesses and by their counsel, I find that the only authority given to Mr. Comstock in relation to this case was as set forth in the correspondence annexed to said substituted motion as an exhibit; and I find that no authority, other than as set forth in said correspondence, was ever conferred upon Mr. Comstock to submit this case or any part of it to arbitration, as agreed to by him in the paper dated June 8, 1898. (14) The plaintiff at no time introduced any evidence in support of the allegations of paragraph 5 of his original motion to reopen the judgment, or in support of the allegations of the corresponding paragraph of his said substituted motion.

"Upon the foregoing facts the defendant claimed: (1) That the award of the arbitrators had been presented to and accepted by the court at its previous term, and therefore it was not within the jurisdiction or legal power of the court to entertain the plaintiff's motion and petition to open said judgment, or to open the same or make any alteration therein; (2) that, if the court had power to entertain said motion, no cause was shown for opening said judgment; (3) that, upon the facts proved and found, the said arbitrators, so agreed upon by the parties, became and were the committee of the court for the purposes of said appraisal and assessment, and that the plaintiff, by his conduct through his attorney, had estopped himself, as against the defendant, from questioning the validity of the appointment of said arbitrators.

"The court overruled the said claims of the defendant and opened said judgment. Thereupon the defendant, on the 27th day of April, 1899, moved the court to accept the award of said arbitrators as being the report of the committee. The attorney for the plaintiff not being present, the court continued the case, with leave to the attorney for the plaintiff, if he saw fit, to file a remonstrance to the acceptance of the award, or any other motion, within five days from said 27th day of April, 1899, and appointed the 5th day of May, 1899, at half past 2 o'clock in the afternoon, for further hearing upon the defendant's said motion for the acceptance of said award. Thereupon the parties appeared by attorney in court on said 5th day of May, 1899, at the hour appointed, to be heard on said motion. No remonstrance was filed by the plaintiff, but he claimed and urged that, inasmuch as no committee had ever been appointed by the court and the court had never ratified said arbitration agreement, the court had no jurisdiction to accept said award, and moved that the award be set aside. Defendant claimed that said award should be accepted, that no cause to the contrary had been shown, and that upon the facts already proved and found by the court, as appear of record, as matter of law, the defendant was entitled to have said award accepted as the report of the committee. The court took said claims into consideration, and on May 23, 1899, overruled the defendant's said claims, found the facts to be as above stated, and ruled that no committee had ever been appointed by the court; that said award did not entitle the defendant to a judgment in said action for the amount thereof; that no judgment had been rendered in said action until January 3, 1899; and, acting at the same term as that in which January 3, 1899, occurred, vacated said judgment of January 3, 1899.              William K. Townsend, Judge."

The arbitration agreement and the report thereon, referred to above, are as follows:

"Lyman Gage, Treasurer, vs. R. M. Judson.

"District Court of the United States, Second Judicial District,
District of Connecticut.

"Know all men that we, Charles W. Comstock, United States attorney for the district of Connecticut, and Robert E. De Forest, of Bridgeport, attorney for the said R. M. Judson, do hereby promise and agree to and with each other to submit, and do hereby submit, all questions and claims between the United States and the said R. M. Judson, in the action above mentioned and pending in said court, to the arbitrament and determination of Alex. C. Robertson, of Montville, Conn., Charles B. Marsh, of Bridgeport, Conn., and Frederick A. Bartlett of Bridgeport, Conn.; and a decision and award of a majority of said arbitrators shall be final and conclusive, upon the approval of the award so made by the court. The hearings are to be in Bridgeport.

"In witness whereof, we have hereunto set our hands and seals this 8th day of June, A. D. 1898.

"C. W. Comstock, U. S. Attorney.       [L. S.]
"Robert E. De Forest, Atty. for R. M. Judson.   [L. S.]"

"Lyman Gage, Treasurer, vs. R. M. Judson.

"District Court of the United States, Second Judicial District,
District of Connecticut.

"Whereas, by a certain agreement in writing, bearing date the 8th day of June, A. D. 1898, made between Charles W. Comstock, United States attorney for the district of Connecticut, and Robert E. De Forest, of Bridgeport, attorney for R. M. Judson in the county of Fairfield, and state of Connecticut, reciting that all questions and claims between the said United States and the said R. M. Judson, in the above-mentioned action and pending in said court, were submitted to the arbitrament and determination of Frederick A. Bartlett, of said Bridgeport, Alexander C. Robertson, of Montville, Conn., and Charles B. Marsh, of said Bridgeport, to whom it was agreed that the said questions should be referred to the final determination of said arbitrators, a copy of which submission is hereunto annexed: Now we, the said arbitrators, having been duly sworn, having heard the witnesses on behalf of the said United States and also witnesses of the said R. M. Judson, and having viewed the premises and property owned by the said R. M. Judson and sought to be condemned for public purposes by the said United States, to wit, the enlargement and extension of the government building, and having heard the arguments of counsel thereon, do award the sum of thirty-two thousand dollars to the said R. M. Judson for damages sustained by him by reason of the proposed enlargement of the said government building and the condemnation of his property, to be paid to the said R. M. Judson by the said government of the United States; and we do hereby direct the said government of the United States to pay to the said R. M. Judson the amount of the award in a reasonable and proper time. In witness whereof, we have hereunto set our hands and seals this eighth day of August, A. D. 1898.

"Frederick A. Bartlett.   [L. S.]
"Alex. C. Robertson.    [L. S.]
"Charles B. Marsh.    [L. S.]"

The present remonstrance undertakes to allege facts not contained in said bill of exceptions, and respondent has taken evidence as to the truth of his allegations. The principal allegations of the remonstrance, not included in the bill of exceptions, state an agreement by remonstrant and his attorneys and Charles W. Comstock, United States district attorney (representing the petitioner), upon two members of a committee; a report thereof to the court by said counsel, and that they would agree upon a third member of the committee; that the court made no objection thereto; that the clerk of said court

made an entry thereof upon the record; that they thereafter agreed upon the third member of the committee, and executed the agreement, Exhibit A, referred to in said bill of exceptions; that said committee viewed the premises and heard the parties. And the respondent claims that, upon the facts alleged, the persons agreed to become a committee of the court, and that, in the absence of any proof of irregularity or improper conduct, their report was binding upon the court. Upon the hearing, it was not proved or claimed that any names whatever were reported to the court by counsel. The entry as originally made by the clerk upon the record of the court did not conform to the fact, even as claimed by respondent. There is no claim that the court was ever informed in any way that the whole committee had been agreed upon up to the time of filing the award. The facts claimed to have been proved are, then, these: (1) That the respondent and the district attorney, at the time set for the appointment of the committee, agreed upon two members of the committee, and, without stating their names, informed the court that they had so agreed and that they would agree upon a third, and that the case would furnish no business for the court; (2) that the court directed them to notify the clerk and made no further comment; (3) that afterwards a hearing was had and a report filed, no order of appointment of a committee ever having been made by the court or signed by the clerk or court, and neither the court nor clerk having ever known the names of the persons acting as committee.

The position of respondent is that the judge of a court may delegate to counsel the appointment of a committee; that thereupon they may agree upon such committee, and such committee may act, without the names of the persons agreed upon ever having been approved by the court. Respondent, in support of his position, quotes a large number of Connecticut cases. In Andrews v. Wheaton, 23 Conn. 112, the case was tried before an auditor. After his report, it was claimed not to be a proper case for an auditor. In Crone v. Daniels, 20 Conn. 331, two auditors were appointed and the hearing was had before one. In Post v. Williams, 33 Conn. 147, the committee had not been sworn. In Sherwood v. Stevenson, 25 Conn. 431, the recorder and one alderman, instead of two, acted as a city court. In White v. Fox, 29 Conn. 570, after hearing and award, the defeated party claimed that the agent who signed the award on his part was not duly authorized. In Smith v. Town of New Haven, 59 Conn. 203, 22 Atl. 146, a committee of only two acted, when the statute required three. In State v. Tuller, 34 Conn. 280, objection of disqualification of a juror was not taken before the verdict. In Kimball v. Society, 2 Gray, 517, hearing had been had before an auditor, and the defeated party then claimed that it was not a proper case for an auditor. In Newcomb v. Wood, 97 U. S. 581, 24 L. Ed. 1085, the arbitrators were not sworn.

In all of these cases it was held that the party had waived objection by not taking it until after the conclusion of the trial and decision against him. In all of these cases the party had a right to waive the objections. In all, except the criminal case, the party might have submitted his claims to a tribunal, or agreed upon the question

at issue, without the aid of the court. The district attorney had no such right. He could not legally agree upon any sum to be paid for the land. He could not agree to submit the case to arbitration. He could not bind the United States by agreement upon a committee. The United States cannot be estopped by his act in such a matter. While a committee nominated or assented to by a district attorney might have been appointed by the court upon motion, it would have been the duty of the court to satisfy itself that the committee was a proper one before appointing it. It is possible that the court, if informed that certain persons had been agreed upon, might have considered the assent of the district attorney sufficient·evidence of their fitness without further inquiry. It is possible, and perhaps probable, that the court would have made some further inquiry, of·counsel or otherwise, in regard to the qualifications of the committee agreed upon, before appointing them. However this may be, the court certainly never did appoint them, unless it be law that the judge, when informed that counsel would probably agree upon a committee, can then and there appoint such a committee as the counsel may thereafter agree upon.

The essential fact not contained in the bill of exceptions, claimed to have been proved, is that the counsel agreed on May 28, 1898, upon two members of the committee, and thereafter upon a third member of the committee, and they were agreed upon as a committee under the statute, and not as arbitrators. The written agreement is for a submission to arbitration. The decision filed is in form an award of arbitrators, not the report of a committee. To find the fact claimed, namely, that they were agreed upon as a committee of the court, it must be found that able and experienced attorneys believed that the court could delegate to them the power to appoint a committee under the statute, and that they by mistake drew up and signed an agreement for arbitration, instead of an agreement appointing a committee of the court, and presented to the court an award, instead of a committee's report. Written documents are more certain than oral testimony, and the court is unable to find the fact desired by the respondents. The United States district attorney and counsel for respondent did, on May 28, 1898, agree upon two of the names mentioned in the arbitration agreement, and afterwards appeared before said two persons, with the third afterwards agreed upon, and were heard, with witnesses and arguments, in regard to the premises in question; but it is not found that the three were agreed upon as a committee under the statute, and not as arbitrators. On the whole evidence, there appears no occasion for changing the finding on the bill of exceptions as to what was done on May 28, 1898, so far as the court is concerned, to wit:

"The attorneys for the petitioner and defendant appeared and informed the court that the case would furnish no business for the court at that time, as the parties would probably reach an agreement as to a committee. No action was taken by the court at that time."

It is further claimed that the report of the committee should be rejected for errors in rulings upon evidence. A large number of questions, both upon the direct and cross examinations, were exclud-

ed. A considerable part of these related to the probable cost and income of an office building erected upon the land in question and the probable profit to be derived therefrom. The respondent was allowed to ask upon cross-examination whether the lot was suitable for an office building, and to show to the witnesses for the government plans of a proposed building, and they uniformly testified that the land was suitable for that purpose and for such a building as was shown by the plans; but questions as to whether the witnesses had taken into consideration the productive capacity of such an office building as was shown or the site would warrant; what, in their opinion, would be the probable rental value of such an office building; whether there was a usual and approved mode of ascertaining the value of an office building on a site peculiarly adapted to such purpose, or of ascertaining the value of such a site; whether the rental capacity of a site adapted to such a building had been considered by the witnesses, and what it would be; and, of a witness testifying that offices upon the fourth story of such a building would be in demand if there was an elevator, what rents he had in his mind as appropriate for that story; whether a building would pay 5 per cent. net; whether witness would regard a building that would pay 5 per cent. net as a good investment; whether witness had taken into consideration the uses to which such a site was adapted, and the probable expense of adapting it, and the expense of adapting it to any special use, and the probable income from such use,—were excluded. One Long-staff, an expert witness for the respondent, having testified on his direct examination that a method of establishing the value of business property, where such property was increasing in value, was to ascertain its productiveness or earning capacity, was asked:

"By application of this method to the case in hand, what would be the value of this property? and, in your opinion, could an office building of five stories be profitably erected on this site?"

It did not appear that the value of the property was increasing. Experts for the respondent were asked what kind of an office building could be profitably erected upon the ground; whether there was any well-known or commonly employed rule, custom, or practice in estimating business property of the kind; what was the rental capacity of the lot, taking into consideration all the matters we have spoken of. Respondent, testifying as a witness, was asked:

"State what improvement in the property you had projected." "With your knowledge of what this property cost you, the price which has been attached to it since you bought, with reference to its location, adaptation to improvement, and of its advantages, state what, in your opinion, the property is worth in the market?"

All these questions were excluded, and exception taken. Even if it be admitted that the report of the committee would not have been set aside for irregular and improper conduct, if all these questions had been allowed, it does not necessarily follow that it should be set aside by reason of their exclusion. The committee to value land, under the Connecticut statute, is not the ordinary committee to find facts merely from evidence, in the place of a judge. They are selected as men acquainted with the methods of valuing and competent

to appraise real estate, from their conclusions largely from inspection, and must be allowed a wide discretion as to the kind of evidence which will be helpful to them in the particular case under consideration. The duties of a committee in a case like the present are very similar to those of a committee on the laying out of highways under the Connecticut statute. In such cases, the committee find whether the way sought for is of common convenience and necessity, and also assess benefits and damages. The supreme court of Connecticut says of such a committee, in Bristol v. Branford, 42 Conn. 321, 322, in reference to the issue of common convenience and necessity:

"It is not a court in the strictest sense, and has not, in all respects, been made subject to the technical common-law rules of evidence by which courts are governed.".

And in Bryan v. Branford, 50 Conn. 246, 250, where the error urged was as to the qualification of experts on the cost of a bridge:

"In this discussion we have assumed, contrary to several decisions in this state, that the strict rules of evidence apply in full force to trials before committees in highway cases."

In Railway Co. v. Woodruff, 49 Ark. 381, 5 S. W. 792, 4 Am. St. Rep. 51, the court says:

"How much latitude should be allowed the parties in the way of bringing out in the testimony collateral, or perhaps we should say cumulative, facts to support the estimates made by witnesses, is a matter that must be left very largely to the discretion of the presiding judge. We would not undertake to fix the limits of a discretion so necessary to be exercised. We deem it proper, however, to say that the presiding judge should not allow collateral issues to spring up and multiply, or a jury to be taxed with facts and figures which could throw no appreciable light upon the question in hand, namely, the market value of the property."

The cases cited by respondent do not seem to furnish any clear precedent for setting aside the report of a committee on value of the land because of the exclusion of such evidence. In Railroad Co. v. Jacobs, 110 Ill. 416, it was held that, where land had been highly fertilized for gardening purposes, the value of the compost on the land might be shown; but it was also held that, where the land in its then condition had a market value, the award should be on the basis of the market value, and that the jury should not attempt to determine the actual value of the property for a special use. In Haslam v. Railroad Co., 64 Ill. 353, it was held that evidence in regard to the existence and value of a water power and mill site on the property should have been received, although not then utilized for that purpose; but it does not appear that there was any attempt to show the probable profit which could be obtained by utilizing the water power. In Johnson v. Railway Co., 111 Ill. 413, it was held that the fact that the land had a special value for railway purposes, and offers received within a few months, should have been admitted. The opinion gives no reasons or authority for the admission of these offers. In Lake Shore & M. S. Ry. Co. v. Chicago & W. L. R. Co., 100 Ill. 21, it was held that evidence of obstruction to the use of other property than that taken should be allowed, and that, as some of the property was specially adapted to railway uses, and in its situation was not available for use for general purposes, the fact of

its adaptability to railway uses should have been admitted by the trial court, and that estimates of its value with reference to such uses should also have been admitted. In that case, however, the property was applied to railway uses only at the time of the appraisal. In Railroad Co. v. Blake, 116 Ill. 163, 4 N. E. 488, it was held that the judgment should not have been set aside because the court allowed the owner to exhibit a plan for proposed improvement, inasmuch as it was exhibited merely as illustrating the capability of the property, although it was intimated that the court should be very cautious in allowing such evidence. In Gardner v. Inhabitants of Brookline, 127 Mass. 358, the owner was allowed to show that the soil was especially adapted to the raising of cranberries; but he was not allowed to show the price of the cranberries, or the probable profits, the court holding that this would open up too wide a field of inquiry. In Re New York, L. & W. R. Co., 27 Hun, 116, it was held that where a strip of land, formerly a canal site, was specially adapted for railway purposes, had various improvements upon it tending to fit it for that purpose, and was held by a railroad which intended it for that purpose, its special adaptability and value for that purpose might be shown. It does not appear to have been fit for any other purpose. In Russell v. Railway Co., 33 Minn. 210, 22 N. W. 379, it was held that the fact that land was bounded on three sides by railroad tracks, and was convenient for elevator, manufacturing, or warehouse purposes, might be shown. In Watson v. Railway Co., 57 Wis. 332, 15 N. W. 468, it was held that it might be shown that the property was suitable for division into village lots and the probable value of such lots. Lewis, Em. Dom. § 480, says that showing the probable value of such lots "is clearly going one step too far. The probable value of village lots which do not exist is too speculative." In Railway Co. v. Woodruff, 49 Ark. 381, 5 S. W. 792, 4 Am. St. Rep. 51, the owner was allowed to show the eligibility and value of the property for bridge purposes. In that case the property was specially valuable for that purpose and worth little for any other. In Boom Co. v. Patterson, 98 U. S. 403, 25 L. Ed. 206, the jury found the value of the land to be $9,358.33, but that its value aside from boom purposes was $300. The court ordered a new trial, unless the owner would reduce the verdict to $5,500, which the owner did, and judgment was rendered for that amount, which judgment was affirmed on appeal. In that case, the owner could not avail himself of the value for boom purposes, and the company could; and the court seems to have considered that the advantage of its value for that purpose should be apportioned between the two, endeavoring to get somewhere near the probable purchase price in case of sale.

From the cases taken together, it is difficult to deduce any general rule applicable to all situations. Estimates of probable profit from a particular use of the property contemplated, but not yet actual, have generally been excluded. Where there is special need for property for some particular purpose, and the property in question is the only one available for that purpose, evidence as to its value for such purpose may, perhaps, be gone into with more particularity and detail than in ordinary cases; but the extent of such inquiry must be

left very much to the judgment of the triors. Thus, if there had been a special demand for a site for an office building in this locality, and this had been the only site available for that purpose, there would have been more reason for admitting computations for possible profit from such a building.

The principal street of Bridgeport is Main street, running nearly north and south. Cannon street runs westerly from Main street, across Broad street, which is the next street parallel to Main street. The post-office and custom-house property is at the corner of Cannon and Broad streets, being south of Cannon street and east of Broad street. The property sought to be condemned is south of Cannon street, next east of the government property. The Messrs. Bishop some years ago opened a passway, called the "Arcade," south of Cannon street, extending from Main street through the middle of the block to the government property, and had erected buildings for business purposes on the south side of it, and, for a part of the way, on the north side. Next easterly of respondent's property are some dwelling houses, called the "Hicks Block," and a building belonging to the Post Publishing Company. A right of way 10 feet in width extends along the rear of these buildings, including the respondent's, adjoining the Arcade, so called, and thence, between the post-office property and the Bishop Block, to Cannon street; thus giving the respondent and the owners of the Hicks Block and of the Post Building access to the rear of their buildings. The respondent's property has a right to pass over this right of way. If the right of way were extinguished, the owners of the Hicks Block and of the Post property could, apparently, erect stores over their rear land and adjoining said Arcade. Said Arcade is very generally used by the public. There are gates between the Arcade and the government property, which were sometimes closed, and a gate between the Arcade and the gangway of Cannon street, which was sometimes closed. Respondent inquired of petitioner's expert on cross-examination:

"Did you take into account, in estimating the Judson property, the value of the right of way in rear of Hicks' property, with a view to the benefit that would be derived to the adjoining property by the extinguishment of that right of way?" "Did you take into consideration, in estimating the value of the Judson property, the right of way with reference to the Arcade privilege?" "Assuming that the extinguishment of this right of way would enable the owners of Hicks Block and the Post Building to extend their buildings to the Arcade, and assuming that the Arcade was a thoroughfare for pedestrians, how much would that add to the value of the Hicks and Post properties?" "What, in your opinion, would it be worth to the owners of the Hicks property and the Post property to have this right of way extinguished?" "What, in your opinion, is the proper method of computing the south half of the Judson lot per front foot, assuming that it has a right of access upon the Arcade, and that the Arcade is a permanent thoroughfare by dedication?" "Would the method described by you this forenoon be the correct method to apply to property on Arcade, assuming its permanence as a thoroughfare?"

Other similar cross questions and a similar question to an expert witness of the defendant were excluded, as was some evidence that the gangway from Cannon street had immemorially been a driveway extending across the right of way in question, and across the

Arcade; thus giving access from the right of way in the rear of respondent's land to the Arcade. It does not appear to have been proven that there was an irrevocable dedication of the Arcade to the public. Apparently it was private property, and the owners might have closed it. If stores had been built over the right of way in question, and adjoining the Arcade, perhaps the Messrs. Bishop, who own the soil of the Arcade, might have enjoined the owners of the stores from using it. In Terry v. City of Hartford, 39 Conn. 286, a street was laid out through a lot, leaving a narrow strip on each side. These narrow strips could not be benefited except by buying or selling the land adjoining, and the land adjoining could not have access to the street laid out, and could not be benefited thereby, except by purchasing the narrow strips. Benefits were assessed against both, and the assessment sustained. It was presumed that the owners of the adjoining land would buy or sell, so as to get the benefit of the street. In like manner, it would seem that if, by extinguishing this right of way, the owners of the Hicks Block and the Post Building might build upon the Arcade, probably some arrangement would be made, even if the Arcade were private property, to the mutual advantage of all parties, and that the probability of such an arrangement would increase the value of the property, so that this right of way might be worth more for the purposes of sale to the owners of the Hicks Block and Post Building properties than its value merely for the purpose of access to the respondent's property. The ground upon which the evidence was excluded is not stated. It may be that the committee considered the situation too plain to make evidence necessary, or that, upon a view of the situation, the advantage was considered trifling.

It was also shown that respondent owned other real estate upon the south side of the Arcade, the two pieces being separated only by the Arcade. The question was asked:

"Assuming that Judson owns property south of the Arcade, and situated with reference to the property under discussion as indicated on map before you, would you say they could be advantageously developed together, so that that feature would give enhanced value to the property under discussion?"

The respondent, testifying, was also inquired of:

"Property on the south side is directly opposite the Arcade. Is value of that property involved in value of this?"

Also:

"Did your plan of improvement include both pieces?"

These questions were excluded. Where part of a piece of land is taken, and the whole piece can be most advantageously used together, the injury to the whole should be included; and the fact that the two pieces are separated by a narrow strip of land hardly excludes the operation of this rule, if it were the fact that they could most advantageously be used together. In all the cases cited bearing upon this subject, however, the whole property was in fact so used.

Evidence was also offered as to offers which respondent had refused, and especially one of $37,500, which was excluded. While offers have been admitted in some cases, and one Illinois case, re-

ferred to above, seems to intimate that a bona fide offer ought to have been admitted, the weight of authority is contrariwise to this, on the ground that evidence of offers is too easily manufactured. On the face of the record it would seem as if there were several questions which might better have been admitted. At the same time, the committee could see the whole situation. It was their duty to value the land according to their best judgment, giving only such weight to the evidence as they considered it to be entitled to.

The question as to the condemnation proceedings preventing improvement, or profitable use of the land by respondent during the proceedings, is not referred to in his brief. There is no evidence that the fact that the land of the United States government adjoining the respondent's would, under the statute, continue to be kept free from buildings, was not considered by the committee. If this report is accepted, there will certainly be an appeal by the respondent. If the report should be rejected by reason of the alleged errors in the rulings of the committee, the acceptance of the next report, however free from errors on this ground, would, unless favorable to the respondent, certainly be appealed from on the ground that the decision of the arbitrators who first acted was final. On the whole, it seems best to accept the report and give the respondent an opportunity to appeal now, and have the main question in dispute decided, rather than to put the parties to the delay and expense of a new trial, which would, unless favorable to respondent, result in further delay.

The motion to amend by making the United States of America the formal petitioner is allowed. The motion for notice to the City Savings Bank of Bridgeport, and for payment of the bank's mortgage on the property out of the sum awarded the defendants, is denied. Let an order be entered in accordance with this opinion.