## LOUGHRAN et al. v. UNITED STATES.
### No. 5585.

Court of Appeals of the District of Columbia.
Argued Dec. 9, 1932.
Decided March 27, 1933.

556

William E. Leahy and James C. Wilkes, both of Washington, D. C., for appellants.

Henry H. Glassie, Leo Rover, Alex H. Bell, Jr., and Arthur G. Lambert, all of Washington, D. C., for the United States.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

HITZ, Associate Justice.

This is an appeal from a judgment for the condemnation of land, after verdict.

The land taken by the United States is the southwest corner of Tenth street and Pennsylvania avenue, northwest, in the city of Washington, otherwise described as lot A, square 349.

The petition was filed under the Act of May 25, 1926, c. 380 (44 Stat. 630), as amended by the Act of Jan. 13, 1928, c. 9 (45 Stat. 51 [40 USCA §§ 341 note, 348]), providing for the acquisition of lands for the government building program.

The property fronts twenty-one feet on the south side of Pennsylvania avenue by sixty feet on Tenth street, and is improved by a five-story brick building used for business purposes.

The appellants contend that their evidence demonstrates a value from $155,000 to $175,000, while the government evidence tends to show a value between $95,000 and $105,000; the verdict and judgment being for $116,408.

The Code of the District of Columbia (title 25, c. 5, § 110) provides a method for obtaining condemnation juries in suits brought by the United States.

From a special box containing names of freeholders possessing the qualifications prescribed for such jurors, the jury commission draws a first, second, or further list of not less than twenty names which are submitted to the court. After examination under oath as to their qualifications, the court selects and impanels a jury of five capable and disinterested persons.

This jury, before hearing any evidence, but in the custody of the marshal and in the presence of the parties, views the land to be taken. Their field of action is therefore not restricted to a consideration of the allegations and evidence presented in court, but includes the exercise of those qualities of judgment and observation which led to their selection as fit persons for such service.

This procedure was followed in this case, and a verdict rendered, which has been confirmed by the court.

Of the twenty assignments of error, sixteen are directed at rulings on the evidence, and many of these relate to the refusal of the trial judge to consider property values on the north side of Pennsylvania avenue, and to the northward thereof, as throwing any helpful light on values on the south side of Pennsylvania avenue.

Although the only evidence of sales of property fronting on the north side of Pennsylvania avenue that appears to have been actually offered at the trial related to prop-

erty between Twelfth and Thirteenth streets, and therefore two or three blocks to the westward, a general assignment of error refers to all the property on the north side of Pennsylvania avenue from Ninth to Fourteenth streets.

But in our opinion the rulings of the trial judge were fully within his discretionary authority, and the evidence of values and of sales, as tendered and rejected, did not relate to properties of like character and quality, similarly situated, and affected by the same causes as the appellants' property. Kerr v. South Park, 117 U. S. 386, 6 S. Ct. 801, 29 L. Ed. 924; Shoemaker v. U. S., 147 U. S. 305, 13 S. Ct. 361, 37 L. Ed. 170; Franzen v. Chicago, M. & St. P. R. Co. (C. C. A.) 278 F. 370; Patterson v. Baltimore, 127 Md. 233, 96 A. 458.

And any court sitting in the city of Washington might almost take judicial notice, as of a geographical fact of general notoriety, that for generations there has been no comparability of value or similarity of use in properties fronting on the north and south sides of Pennsylvania avenue, and a recognition of this fact by the appellants is implied in the attempts of their brief to explain it.

This long-established difference has not been diminished by conditions of modern motor traffic, which have increased the difficulty and the danger of crossing Pennsylvania avenue, with its great width and its diagonal course, involving many intersections, while the center of population and of business has continued its progress to the northward of that great thoroughfare.

Again, it is assigned as error that the judge expressed an opinion before the jury as to a difference in values on the north and south sides of Pennsylvania avenue. But we find from our examination of the record that he said no more than was necessary to restrict the evidence to the law, and that he sufficiently disclaimed to the jury either the possession or expression of any opinion touching the value of the land in question, which was left entirely to the jury to determine.

The sixth, seventh, and eighth assignments of error are based on the admission of evidence showing prices obtained for certain neighboring properties from seven to ten years before these proceedings. No question is made respecting the time of such sales or touching the comparability of values or similarity of location in the properties involved, but it is contended that each of these sales was unusual or abnormal and did not constitute a fair market transaction or throw light on fair market values. One of these sales conveyed lots B and 807 in square 349, which adjoined the property here in question both on Pennsylvania avenue and on Tenth street.

The purchaser testified that when he bought this property it was dilapidated and out of repair, mortgaged, and yielding a revenue inadequate to the fixed charges, and that a small portion of the land was held by a possessory title, which he cured by equity proceedings at the cost of the seller, after which he improved the property by expenditure of $5,000, rented it, and later sold it.

At the time of his purchase, he knew nothing of any necessities of the seller, but considered the property a bargain at $41,000, and would not, in the conditions, have bought it at what he considered a full market value.

The next of these sales conveyed the southeast corner of Tenth street and Pennsylvania avenue, immediately across Tenth street from the property in question. This sale was made in 1923 by the owner to her tenant, who had occupied it for ten years.

The purchaser testified that the owner was a spinster of some 60 years, a sane and intelligent woman, who had frequently said that, if she ever sold the property, it would be to him, and he thinks he got it at about half price, or perhaps less, the price being $56,000.

Over objection, the court admitted evidence of these sales as items of proof which such a jury is entitled to receive and weigh, and ultimately to give them such weight as they may consider them to be worth, if any.

As all the personal or unusual circumstances attending the sales were fully brought out, and went to the jury along with the prices obtained, we see no error in the rulings.

From the testimony, these transactions appear to fall within the imaginary category described in the instructions to the jury, as being between a seller, willing but not obliged to sell, and a purchaser, willing but not obliged to buy. All the testimony here relied on by the appellants to disqualify these sales came from the purchasers therein, and for a purchaser to speak well of his purchase—ex post facto—is not unusual.

" 'Tis naught, 'tis naught, saith the buyer: but when he is gone his way, then he boasteth." Proverbs 20:14.

The third sale so objected to was of 924 Pennsylvania avenue, on the south side of the street, in the next block, and sold for $30,000 in 1920. The tenant of this property offered the owner $25,000 for it; thereupon the own-

er consulted a competent real estate broker of high standing, who advised him that the property was worth more, and that he could obtain more for it. The owner then authorized the broker to sell it for $30,000, saying he did not wish to be too hard on his tenant, and, contrary to the advice of the broker, he did sell it at that price, the sale being closed between broker and purchaser.

The admission of this evidence is assigned as error, but here again we are of opinion that the evidence was properly received, as the statement of price was accompanied with explanatory testimony showing the personal conditions and details which are alleged to make the sale so abnormal as to be inadmissible in evidence. But this contention of the appellant is based on the fact that the owner preferred to take his own judgment rather than his broker's, and to sell to his tenant at his own price, when he could get it.

And he may have been led to this conclusion by a realization of the decay brought to Pennsylvania avenue in part by the unreasonably high prices at which property there had so long been held.

Assignments of error numbered 17 and 18 present related questions based on certain prayers bearing on the sales objected to, which were ruled on by the court.

Counsel for the owners offered two prayers asking that the jury be instructed to disregard any sale made under other than fair market conditions.

These prayers were rejected by the court, and the government prayer, numbered VIII, granted as follows: "Recent bona fide sales under fair market conditions, or recent bona fide contracts of sale under like conditions of any lot or lots, parcel or parcels within the limits of the area to be condemned, or in the vicinity thereof, or so situated as to have a bearing upon the market value of the land to be condemned in this proceeding, may be considered by the jury in so far as such sales or sale contracts, looking at the circumstances of each instance, may reasonably be regarded as evidencing, or throwing light upon the fair market value of the land to be condemned unaffected by the Government's declared intention to acquire land for the public purposes mentioned in said Act of Congress of May 25, 1926 and the act amendatory thereof of January 13, 1928, or by any other special or extraordinary circumstances, whether likely to enhance or to depress the price."

We think this prayer correctly states the law, and that in rejecting a restatement of it as contained in the owner's prayers the trial judge did not abuse his discretionary authority.

By these rulings, on evidence and prayers, the aforementioned sales, together with the testimony explanatory thereof, were left to the jury to be weighed, valued, or rejected as they might determine.

In another assignment of error the difficulty of crossing Pennsylvania avenue recurs again.

An expert witness for the government gave his opinion of the value of the property in question. On cross-examination, he was asked as to his knowledge of certain sales of properties a short distance to the northward of Pennsylvania avenue, and the prices brought in such sales. These questions were excluded by the court and exceptions noted.

The appellants were, of course, entitled to probe the qualifications of this expert witness, like any other, and in the course of such probing to inquire into his historical knowledge of recent sales. But such an investigation into the professional qualifications of an expert witness is to enable the jury to appraise the value of his opinion, not to fix the value of the land in dispute, by indirectly bringing into evidence specific sales and prices of other properties not comparable to the one in question, and which could not be directly introduced under the rulings of the court. We find no error here.

In their case in chief, the appellants', whether purposely or otherwise, did not introduce their lease with their tenants. This lease was later offered in evidence by the government, after which appellants offered in rebuttal certain expert evidence tending to prove a greater rental value than the lease reserved; which evidence was rejected.

In the circumstances, we think this was not proper rebuttal and was properly rejected, for there was no offer to prove that the rental as stated by government witnesses or as indicated by the lease was not truly and accurately stated, but only that a real estate broker was of opinion that a higher rental might have been obtained.

Gross inadequacy of the verdict is also assigned as error, but such an assignment presents a question peculiarly within the province of the jury, and the amount here found is well within the range of evidence.

In any event, the bill of exceptions contains no material for a review of this ques-

tion, if it was otherwise desirable to review it in the absence of other error.

No further questions were emphasized by the appellants in their brief or argument, though all assignments of error have been considered, and we are of opinion that the judgment should be affirmed, and that the following authorities support the views here expressed: Scufferle v. MacFarland, 28 App. D. C. 94; In re Northlake Avenue, 96 Wash. 344, 165 P. 113; City of Chicago v. Mullin, 285 Ill. 296, 120 N. E. 785; Chapman v. Capital Traction Co., 37 App. D. C. 479; Dean v. H. Koppers Co., 49 App. D. C. 230, 263 F. 626; Capital Traction Co. v. Lyon, 57 App. D. C. 396, 24 F.(2d) 262; Wrenn v. Smith, 59 App. D. C. 350, 41 F.(2d) 972; Gage v. Judson (D. C.) 111 F. 350.

Affirmed.